**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.:**



FILED BY_____D.C.

JAN 2 8 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

ROBERT SARHAN
ANABELLA SOURY ET AL.

                    Plaintiff,

                                                    **DEMAND JURY TRIAL**

v.

H & H INVESTORS, A FLORIDA CORPORATION
RALPH HALIM, INDIVIDUALLY FROM H&H INVESTOR, et.al
RAUL GASTESI, JR. ATTORNEY & INDIVIDUALLY
THOMAS SANDERS ATTORNEY & INDIVIDUALLY
PATREEZE PEARCE, AS A COURT REPORTER AND INDIVIDUALLY
WILLIAM P. WAKSHINSKY (BRICKELL, GOMBERG & ASSOCIATES)
JUDGE JOSE M. RODRIGUEZ, IN OFFICIAL AND INDIVIDUAL CAPACITY
JUDGE RODNEY SMITH, IN OFFICIAL AND INDIVIDUAL AND CAPACITY
JUDGE LESLIE B. ROTHENBERG, IN AN OFFICAL AND INDIVIDUAL CAPACITY
JUDGE GLENN SALTER IN AN OFFICAL AND INDIVIDUAL CAPACITY
JUDGE THOMAS LOGUE IN AN OFFICIAL AND INDIVIDUALLY CAPACITY
GEORGE L. PIRO, FBI
ALFREDO DURAN, FBI
CHRISTOPHER A. WRAY, FBI DIRECTOR
MIAMI DADE COUNTY
RON DESANTIS GOVERNOR OF FLORIDA

                    Defendants,

**COMPLAINT AND INJUNCTION RELIEF TO VOID A STATE COURT JUDGMENT WHICH WAS PROCURED THROUGH EXTRINSIC FRAUD, JUDICIAL CORRUPTION (BRIBERY OF A STATE JUDGE) AND FRAUD ON THE COURT, FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983, VIOLATION OF SARHAN'S 14 AMENDMENT RIGHTS OF THE US CONSTITUTION, MORTGAGE FRAUD, ATTORNEY MISCONDUCT, FALSIFYING RECORDS, EXTORTION, FRAUDULENT INDUCEMENT, UNJUST ENRICHMENT, OBSTRUCTION OF JUSTICE AND FAILURE OF THE FBI TO FULFILL MISSION STATEMENTS AND PROTECT SARHAN AND FAMILY FROM MORTGAGE FRAUD, PUBLIC CORRUPTION, CIVIL RIGHTS VIOLATION, COLOR OF LAW VIOLATIONS AND WHITE COLLAR CRIMES AND FAILURE OF MIAMI DADE COUNTY & POLICE DEPARTMENT TO INVESTIGATE AND PROSECUTE JUDICIAL CORRUPTION  TO ENSURE THAT ALL ARE HONEST ETHICAL AND FAIR TO ALL**

1

In the "Interest of Justice," I come to this United States District Court District to Void a State Court Judgment which was procured through Extrinsic Fraud and Due Process Violations, due to the widespread corruption here in Miami Dade County Florida, where I was denied a foreclosure trial and the judge went straight to judgment on a Motion in Limini without a Motion for Summary Judgment. This is a Predatory Loan which Congress and the Florida Legislature ruled illegal, to protect Home Owners from Predatory Lenders.

Due to be an Out Spoken Person that fought for his mother's life who was murdered with medication by a Probate Court Judge, Lawyers and Guardians with the medication called Seroquel, Sarhan cannot receive a fair and unbiased hearing or trial here in South Florida, due to this widespread corruption. In the "Interest of Justice," I pray for this case to be transferred to the United States District Court Middle District of Florida, where Sarhan can get a fair and unbiased Trial by Jury. This is our home of 25 years, to allow this fraudulent foreclosure would cause Irreparable Harm and a Manifest Injustice. To lose our home after 25 years would cause homelessness and penniless to our family with minor children. (EXHIBIT A)

The Petitioner, Robert Sarhan has been denied meaningful access to the Courts due to Extrinsic Fraud by Raul Gastesi Jr., Ralph Halim, Judge Rodriguez and Judge Smith.

The Lenders attorney Raul Gastesi, Jr. has make a mockery of the proceeding, he has committed Extrinsic Fraud, Fraud on the Court, Bribery of a State Judge, Perjury and many other crimes, causing a Manifest Injustice and Irreparable Harm to the Sarhan Family. Raul Gastesi, Jr has had ex-parte communications with Judge Jose Rodriguez for the Judge to grant a judgment on a Motion in Limini without a Motion for Summary Judgment. The State Court failed to address the issue of Mortgage Fraud, Fraud on the Court and Extrinsic Fraud instead pretending, it does not exist, thereby perpetrating a simulated Color of Law Proceedings wherein it is perpetrating the wrong doing and abetting unlawful acts and depriving Sarhan of his Constitutional Rights of Due Process in a Sham Proceedings.

Once the Petitioner had this Case remanded to the US District Court, Raul Gastesi, Jr. had ex-parte communication with Magistrate Judge Alicia Otazo Reyes his former classmates in law school at the University of Miami, she ordered the case to remanded back to the state court "without jurisdiction," then Judge Jose Martinez adopted her recommendations and sent this case back to the state court, violating Sarhan's constitutional rights. Under 42 § USC 1983, 28 USC § 1443 and 28 USC § 1331 and Federal Question Jurisdiction had a legal right to remand to the US District Court.

The right of access to the Courts is clear according to the U.S. Supreme Court. Bounds v. Smith, 430 U.S. 817 (1977);M.L.B. v. S.L.J., 519 U.S. 102 (1996). The Supreme court has stated the right of access to the courts also protected by the First Amendment. BE&K Construction CO. v. National Labor Relations Board et al. 536 U.S. 516 (2001)("the right to petition extends to all departments of the Government," and that "[t]he right of access to

2

the courts is ... but one aspect of the right of petition.").California Motor Transp. Co. v. Trucking Unlimited, 404 U. S. 508, 510 (1972)("The right of access to the courts is indeed but one aspect of the right of petition."). See Tennessee v. Lane, 541 U.S. 509 (2004)(recognizing "the fundamental right of access to the courts"); Procunier v. Martinez, 416 U.S. 396 (1974)("The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.").

**COMES NOW,** Plaintiff ROBERT SARHAN et al. (hereinafter "Sarhan"), proceeding pro-se brings this action against Defendants H & H INVESTORS, A FLA. CORP, RALPH HALIM, ("hereinafter Halim") RAUL GASTESI, JR., (hereinafter "Gastesi") GASTESI AND ASSOCIATES, THOMAS SANDERS ATTORNEY, THOMAS SANDERS INDIVIDUALLY, (hereinafter "Sanders") PATREEZE PEARCE, (hereinafter "Pearce") BRICKELL, GOMBERG & ASSOCIATES, WILLIAM P. WAKSHINSKY,(hereinafter "Wakshinsky") JUDGE JOSE M. RODRIGUEZ, JOSE M. RODRIGUEZ INDIVIDUALLY, (hereinafter "Rodriguez") JUDGE RODNEY SMITH, RODNEY SMITH INDIVIDUAL (hereinafter "Smith"), JUDGE LESLIE B. ROTHENBERG, IN AN OFFICAL AND INDIVIDUAL CAPACITY, JUDGE GLENN SALTER IN AN OFFICAL AND INDIVIDUAL CAPACITY, JUDGE THOMAS LOGUE IN AN OFFICIAL AND INDIVIDUALLY CAPACITY,GEORGE L. PIRO, FBI, ALFREDO DURAN, FBI, CHRISTOPHER A. WRAY, FBI, MIAMI DADE COUNTY RISK MANAGEMENT, GOVERNOR RON DESANTIS and alleges:

## DECLARATION OF TRUTH

1.     "Whereas the Statements in this Declaration of Truth are made under penalties of perjury to be true and correct to the best of Robert Sarhan's knowledge and belief. As such this Court is required by operation of law to take these statements as true and correct for all of the following:"

2.     Pro se pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L.Ed.2d 652 (1972).

3

While "pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Pro se pleadings are to be liberally construed and held to a less stringent standard than pleadings drafted by attorneys. Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).

## JURISDICTION AND VENUE

3.      Sarhan's complaint-in-intervention pursuant to the Younger Abstention Doctrine applies in this case. See Younger v. Harris, 401 U.S. 37 (1971), which generally requires federal courts to decline to adjudicate the applicable federal claims in favor of ongoing parallel state judicial proceedings under certain circumstances, however there are exceptions to the Younger Abstention Doctrine that apply in this case.

4.      In the Sarhan Case, the Younger Abstention Doctrine analysis held: (1) the state case constituted an ongoing judicial proceeding; (2) regulating attorney misconduct was an important state interest but the Court was also involved in misconduct; and (3) Sarhan had "NO OPPORTUNITY" to assert his federal defenses in a competent and non-biased state forum, therefore the Younger Abstention Doctrine apply in this case.

**EXCEPTIONS TO THE YOUNGER EXTENSION DOCTRINE IRREPARABLE HARM AND INJURY WILL COME TO THE "SARHAN FAMILY" WHICH IS "BOTH GREAT AND IMMEDIATE IF THIS COURT DOES NOT INTERFERE IN THESE EXTRAORDINARY CIRCUMSTANCES**

5.      The **exceptions** to the **"Younger Abstention Doctrine"** apply. Those exceptions are set out in footnote 4 to Colahar v. Wells Fargo Bank, 56 F. Supp. 3d 603 (D. Del. 2014). The facts demonstrate that those exceptions apply in this case and this case where the State Court has caused "Irreparable Harm" and a Manifest Injustice to the "Sarhan Family" which is "both Great and Immediate," Younger, 401 U.S. at 46, 91 S. Ct. 746. "**Where the state and federal law was**

**"flagrantly and patently violative of expressed Constitutional Prohibitions,"** id. at 53, 91 S. Ct. 746, and where the Defendant, H & H Investors showed "Bad Faith", Harassment, and other Unusual Circumstances, as well as Stalking Sarhan and minor child that would call for Equitable Relief." Id. at 54, 91 S. Ct. 746, *Hughes v. Att'y Gen. of Fla., 377 F.3d 1258, 1263 n. 6 (11th Cir.2004)* (citing *Younger, 401 U.S. at 45, 53-54, 91 S.Ct. 746*), therefore we pray that this Court will Remand back to this US District Court for the following reasons:

6.      That a federal court may interfere in extraordinary circumstances, such as when a state statute is found to be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Hughes*, 274 F. Supp. 2d at 1340 (quoting *Younger,* 401 U.S. at 53-54, 91 S. Ct at 755). The district court, citing *Baggett v. Dep't of Prof'l Reg.*, 717 F. 2d 521, 524 (11th Cir. 1983), noted that this Circuit has held that such intervention is permitted where a petitioner demonstrates that federal preemption of state law is "readily apparent." "*Hughes*, 274 F. Supp. 2d at 1340. The district court then determined that the preemption of the state law in the present case is readily apparent, and this it was appropriate to intervene. *Id.* In the first, Case 09-74988, Sarhan Appealed Judge Reyes decision in the 3rd District Court of Appeals, see *Sarhan v. H & H Investors* Case No. 10-3394, and won the Appeal, stating that the Stipulation was unenforceable and could not foreclose. In this Case, *Sarhan v. H & H Investors*, this district court should conclude that federal law preempts state law in the area where the state court did violate many of the Florida Statutes and Sarhan's Constitutional Rights of Due Process, where Sarhan was denied a fair and unbiased hearing and denied a Foreclosure Trial and went straight to judgement. Where Sarhan was **"Denied the Right to be Heard"** in the state court. The state court foreclosure judgment is a "VOID JUDGMENT," therefore it has no force or effect. The

state court judge acted in a manner inconsistent with "Due Process" and denied the Plaintiff his Rights to Be Heard in the state court. The validity of a judgment may be affected by a failure to give the constitutionally required due process notice and an opportunity to be heard. Earle v. McVeigh, 91 US 503, 23 L Ed 398. See also Restatements, Judgments ' 4(b). Prather v. Loyd, 86 Idaho 45, 382 P2d 910. A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights. *Sabariego v Maverick*, 124 US 261, 31 L Ed 4 30, 8 S Ct 461, and is not entitled to respect in any other tribunal. Judge Rodriguez refused to allow Plaintiff Counsel to cross examine the Lender and refused to hear testimony about the Predatory Loan.

7. The Supreme Court has held that federal officials may be sued in their individual capacities for violations of a person's constitutional rights. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971). Bivens actions are brought directly under the Constitution, without a statute providing a cause of action. Hardison v. Cohen, 375 F.3d 1262, 1264 (11th Cir. 2004). Additionally, 42 U.S.C. § 1983 creates a private right of action for deprivations of federal rights by persons acting under color of state law. 42 U.S.C. § 1983. To prevail on a § 1983 claim, "a plaintiff must demonstrate both (1) that the defendant deprived h[im] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." Arrington v. Cobb County., 139 F.3d 865, 872 (11th Cir. 1998). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).

8. No state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A violation of procedural due process occurs where the state

6

fails to provide due process in the deprivation of a protected liberty interest. *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc). On the other hand, a violation of substantive due process occurs where an individual's fundamental rights, those "implicit in the concept of ordered liberty," are infringed—no matter the fairness of the procedure. *Id.* at 1556. Under the 14th Amendment, No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person within its jurisdiction the equal protection of the laws.

9.      **Sarhan has alleged many Federal Questions but only needs one, which alleged a violation of the FDCPA--a federal statute.** *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013) (stating that "standing in federal court is a question of federal law, not state law"); *see also Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 495 (6th Cir. 1999). Slorp has established standing to seek relief under the FDCPA, and the district court erred when it held otherwise.

10.      Sarhan is and at all times relevant hereto was a "consumer" as defined by 15 U.S.C. §1692a(3) and Fla. Stat. §559.55(2). Accordingly, he has standing to bring claims under the FDCPA, FCCPA, RESPA, TILA,  Article III section 2 of the United States Constitution, 42 USC 1983 to redress the depravation, under color of state law, of rights secured by the Constitution of the United States, including under the First, Fifth, Eighth, Ninth, and Fourteenth Amendments by virtue of being directly affected by the Defendants' violations of these Acts and her rights under the same.

11.      This is an action brought by Sarhan, a consumer for actual and statutory damages resulting from Defendants' violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"); the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq. ("RESPA"), and the implementing regulations for each.

7

12. This action is also brought for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the Florida Consumer Collection Practices Act, FCCPA Fla. Stat. § 559.55 ("FCCPA"). Both the FDCPA and FCCPA were enacted to protect consumers, such as Plaintiff, from abusive, deceptive, and unfair debt collection practices. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013) (stating that "standing in federal court is a question of federal law, not state law"); *see also Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 495 (6th Cir. 1999).

13. This is a federal civil rights action brought by Robert Sarhan to seek damages and relief for violation of fundamental rights secured by the United States Constitution under the 1st, 5th, 8th, 9th and 14th Amendments and for violations of 42 USC Sec. §1983, 42 USC Sec. §1985, 42 USC Sec. §1986, 28 U.S.C. § 1443, 28 USC §1441, 28 USC §1331, 1871 Civil Rights Act in relation to the deprivation and violation of fundamental rights of procedural and substantive due process. Where the Florida State Court abridged the privileges and immunities of the Plaintiff and deprived the Plaintiff of Life, Liberty, and Property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws, under the Equal Protection of the laws. The default judgement entered by the State Court is void as a matter of law and equity and can be attacked collaterally in any court at any time. Sarhan was denied a hearing on its merits of this case due to violation of due process, the Fraud on the Court and Judicial Corruption.

14. Sarhan's complaint raises a federal question because it asserts claims under 42 U.S.C. § 1983 for alleged violations of federal constitutional rights. When a federal question is present on the face of the complaint, the district court has original jurisdiction and the action may be

removed to federal court. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392-93, 107 S. Ct. 2425, 96 L.Ed.2d 318 (1987). Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendants to the district court of the United States for the district and division embracing the place where such action is pending 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over section 1983 claims, notwithstanding the fact that they share such jurisdiction with the courts of the states in which they sit. Accordingly, section 1983 claims brought in state court are removable pursuant to section 1441(a), unless Congress has "otherwise expressly provided." The district court has supplemental jurisdiction over Sarhan's state law claims because they form part of the same case or controversy as his section 1983 claims. See 28 U.S.C. § 1367(a). This entire case was properly removed, and the district court was therefore without discretion to remand it. See Gaming Corp., 88 F.3d at 542 (stating that a district court has no discretion to remand a claim that states a federal question).

15.    "[T]he presence of even one federal claim gives the defendant the right to remove the entire case to federal court." Gaming Corp., 88 F.3d at 543. By H & H Investors, Ralph Halim violating claims that arise under federal law, Halim subjected himself to the possibility that the defendants would remove the case to federal court. See City of Chicago v. International College of Surgeons, 522 U.S. 156, 118 S. Ct. 523, 529, 139 L.Ed.2d 525 (1997). The district court has supplemental jurisdiction over Sarhan's state law claims because they form part of the same case or controversy as his section 1983 claims. See 28 U.S.C. § 1367(a). This entire case was properly removed, and the district court was therefore without discretion to remand it. See

9

Gaming Corp., 88 F.3d at 542 (stating that a district court has no discretion to remand a claim that states a federal question).

16.    Sarhan also assert supplemental jurisdiction over Federal and Pendent State Law Claims for unlawful wrongful foreclosure, attempted theft of property and real property interests, Extrinsic Fraud, Fraud on the Court, Fraudulent Misrepresentation, Perjury, Harassment, Stalking, Fraudulent Inducement, Conspiracy to commit Fraudulent Inducement, Unclean Hands Doctrine, Predatory Loan, Charging Interest on top of Interest, violation of HOEPA, Florida Fair Lending Act, Consumer Finance Protection Act, Florida False Claim Act, violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961 et seq.), 18 USC § 241 Conspiracy against Rights, tortious interference with business relationships, unjust enrichment, fraud, conspiracy to commit fraud, and aiding and abetting fraud. Placing Dead Animals if front of Sarhan's front gate twice to scare and intimidate Sarhan and Family to leave there home.

17.    Plaintiffs seek an award of actual damages, general, compensatory and punitive damages for violations of rights, privileges and immunities including but not limited to due process of law both procedurally and substantively, pain, suffering, mental and emotional distress and applicable fees, costs and interests as allowed by law.

18.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 because the Complaint alleges federal claims and requires the resolution of questions of federal law under FDCPA, RESPA, FFLA and TILA.

19.    Plaintiffs claim federal jurisdiction pursuant to Article III section 2 which extends the jurisdiction to cases arising under the U.S. Constitution. This action is brought pursuant to 42 U .S.C. § 1983 to redress the depravation, under color of state law, of rights secured by the Constitution of the United States, Fed. R. Civ. P. Rule 60(b)(3) & 60 (d)(1)(3) as an independent

action, including the First, Fifth, Eighth, Ninth, and Fourteenth Amendments, and Federal Question Jurisdiction, along with the Hobb's Act, 18 U.S.C. §1951.

20. Venue is proper because all acts and omissions giving rise to the claims herein occurred within the territorial jurisdiction of this District or are related to real property and business transactions occurring in this District pursuant to 28 U.S.C. § 1391(b).

## STALKING SARHAN & SARHAN'S YOUNG SON

21. Furthermore, this Court has supplemental jurisdiction over the Florida Consumer Collection Protection Act FCCPA claim under 28 U.S.C. § 1367 because the basis of the federal claims involves the same illegal conduct that forms the basis of the State claim and the state and federal claims derived from a common nucleus of operative facts so that Plaintiffs would ordinarily be expected to try them all in one judicial proceeding. Also 42 U.S.C. § 3617, Interference, Coercion, and Intimidation where the Lender Ralph Halim Intentionally, Willfully and Maliciously Stalked the Sarhan's and his 7-year old son by following them in his truck where is known he carries a gun, he followed for a Sunday drive on their motorcycle, while at night stopping to get their mail drove up at a high speed, slamming on breaks beeping his horn like he was going to hit father and son. Following Sarhan on his way to work at Baptist Hospital. Then after filing a restraining order, two weeks later Halim put dead animals in front of our front gate, twice. **(EXHIBIT B)**

22. Plaintiffs seek and demand a **Trial by Jury** on each and every cause of action and claim set out herein.

## FEDERAL COURT JURISDICTION CONTINUED

23. Failure to obtain substantial Justice in state courts lead to this suit being filed in Federal Court under 42 USC § 1983 and Federal Question Jurisdiction. This suit ask for Relief from all

orders made in violation of State and Federal Law and Injunctive Relief due to Mortgage Fraud and further request relief as the court deems appropriate.

24. "When a State Judge acts (Rodriguez, Smith, Rothenberg, Salter, Logue) under a state law in a manner violative of the United States Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case "stripped of his official or representative character" and is subjected in his person to the consequences of his individual conduct. The state has no power to impart him any immunity from responsibility to the supreme authority of the United States." Whenever a judge acts where he/she does not have jurisdiction to act, they are warring on the United States Constitution, therefore Rodriguez, Smith, Rothenberg, Salter, Logue has engaged in an acts of Treason against the US Constitution. The U.S. Supreme Court in Scheuer v. Rhodes, supra, 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974), U.S. v. Will, 449 U.S. 200, 216, 101 S. Ct. 471, 66 L. Ed. 2d 392, 406 (1980); Chen v. Virginia 19 U.S. (6 Wheat) 264 (1921). See. Cooper v. Aaron, 358 U.S. 1, 78 S. Ct. 1401(1958). Therefore, without authority or jurisdiction, a judge loses absolute immunity and is subject to a lawsuit and the Judgment is Void. Under Rule 60(b)(4), a district court "may relieve a party . . . from a final judgment, order, or proceeding [if] the judgment is void." Fed. R. Civ. P. 60(b)(4). A judgment is "void" under Rule 60(b)(4) "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." Burke v. Smith, 252 F.3d 1260, 1263 (11th Cir. 2001) (quotation marks omitted).

25. Res Judicata does not apply in this case, because: (1) Sarhan has been denied a full and fair opportunity to litigate this case, therefore there was never a final judgment on the merits. (2) Gastesi and Halim's Extrinsic Fraud and Fraud on the Court allows any court to treat any previous case as a nullity, and the "fraud upon the court" had never been addressed. (3) There

are serious Due Process violations in this case and therefore *res judicata* does not apply and may be relitigated. (4) Lastly, the Florida Supreme Court states that although res judicata "has a more binding effect" than the law of the case, courts will not invoke the doctrine "where it will work an **INJUSTICE**." Thus, like the law of the case doctrine and collateral estoppel, res judicata will not be applied where it would defeat the ends of **JUSTICE**, where Sarhan is being defrauded out of his Liberty and Property by Raul Gastesi Jr, Ralph Halim from H&H Investors, Judge Jose Rodriguez, Judge Rodney Smith and the Third DCA, where the Third DCA made critical error which goes against the Constitution, Congressional Law and the Florida Legislature, therefore res judicata does not apply and the Third DCA ruling is Void.

26.     This judgment of Foreclosure by state Judge Jose Rodriguez is Void, where Sarhan was denied a Trial, denied the right to cross examine the lender and was denied the Right to be heard in the State Court, where Gastesi and Halim have committed Extrinsic Fraud and Fraud on the Court, where the Fraud on the Court was never litigated. Any reasonable person would believe that Judge Rodriguez violated his Oath of Office and excepted a bribe from Raul Gastesi, Jr to win this case. Judge Rodriguez denied Sarhan his right to be heard in the state court, so there is no  record of the fraud perpetrated by Gastesi and Halim. Judge Rodriguez was disqualified by Sarhan and Judge Smith received this case and refused to hear a Motion for Reconsideration, put his home for sale and again denied Sarhan the right to be heard in the State Court, causing Irreparable Harm and a Manifest Injustice.  A judgment of a court without hearing the party or giving Sarhan an opportunity to be heard is not a judicial determination of his rights, Sabariego v Maverick, 124 US 261, 31 L Ed 430, 8 S Ct 461, and is not entitled to respect in any other tribunal. "A void judgment does not create any binding obligation. Federal decisions addressing

13

void state court judgments include Kalb v. Feuerstein (1940) 308 US 433, 60 S Ct 343, 84 L ed 370; Ex parte Rowland (1882) 104 U.S. 604, 26 L. Ed. 861:

> "A judgment which is void upon its face, and which requires only an inspection of the judgment roll to demonstrate its wants of vitality is a dead limb upon the judicial tree, which should be lopped off, if the power to do so exists." People v. Greene, 71 Cal. 100 (16 Pac. 197, 5 A.m. St. Rep. 4481. "lf a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void." (Freeman on Judgments, 120c.) An illegal order is forever void.

27. This case was remanded to the Federal Court under 42 USC § 1983, with Federal Question Jurisdiction. Judge Jose E. Martinez became the Judge and Sarhan refused having a Magistrate Judge in this case, however, Magistrate Judge Alicia Otazo-Reyes wanted this case so she could help her former Law School Classmate, Raul Gastesi, Jr. and remanded this case back to the state Court, illegally. Judge Martinez adopted Magistrate Judge Reyes recommendations, violating Sarhan's due process rights, since Judge Otazo-Reyes was without jurisdiction. Judge Martinez denied Sarhan's Emergency Hearing Request on his Motion for Reconsideration and also denied Sarhan the right to be heard in violation Sarhan's due process rights. Judge Martinez recent response stating that the request for an Emergency Hearing was moot, was not truthful according to the record in the docket. Judge Martinez failed to address the issues in this case and the Void Judgement. He violated Sarhan's Constitutional Rights and did not address the issues and had no legal authority to send this case back to the state court, he acted out of his jurisdiction, against 42 USC § 1983, 28 USC § 1443, 28 USC § 1331, Federal Question Jurisdiction, Congressional and Legislative laws violating Sarhan's 14th Amendment Rights to the United States Constitution causing the Sarhan Family Irreparable Harm.

28. The Third DCA ruling per curiam in this case is Void. This residential mortgage loan is a Predatory loan which has been ruled illegal by Congress and the Florida Legislature and violates

14

the Florida Fair Lending Act and violates many of the Florida Statutes under the FS § 494.00791, therefore, Judge Leslie Rothenberg, Judge Glenn Salter and Judge Thomas Logue were without jurisdiction and the judgment is Void. An order that exceeds the jurisdiction of the court is void and can be attacked in any proceeding in any court where the validity of the judgment comes into issue. (See Rose v. Himely (1808) 4 Cranch 241, 2 L ed 608; Pennoyer v. Neff (1877) 95 US 714, 24 L ed 565; Thompson v. Whitman (1873) 18 Wall 457, 21 1 ED 897; Windsor v. McVeigh (1876) 93 US 274, 23 L ed 914; McDonald v. Mabee (1917) 243 US 90, 37 S.Ct 343, 61 L ed 608.

29.     "If a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void." (1 Freeman on Judgments, 120c.)  "A void judgment is no judgment at all and is without legal effect." (Jordon v. Gilligan, 500 F.2d 701, 710 (6th Cir. 1974) "a court must vacate any judgment entered in excess of its jurisdiction." (Lubben v. Selective Service System Local Bd. No. 27, 453 F.2d 645 (1st Cir. 1972).

30.     "Where the well pleaded facts in this case permit this court to conclude misconduct in which the complaint alleges and shown to be true, the pleader is entitled to relief." See Ashcroft v. Iqbal 556 U.S. 662 (2009).

## SARHAN'S COUNSEL WAS DENIED THE RIGHT TO CROSS EXAMINE THE LENDER H & H INVESTORS RALPH HALIM

31.     The right to cross-examine witnesses under oath is a fundamental right, and cannot be denied.[ii] However, in *Keesling v. Baker & Daniels*, 571 N.E.2d 562 (Ind. Ct. App. 1991).

32.     In *Demenech v. Secretary of DHHS*, 913 F.2d 882, 885 (11th Cir. 1990) the Eleventh Circuit held that an ALJ abused his discretion and violated a claimant's right to procedural due process where he denied the claimant's request to depose and cross-examine the author of an adverse medical report and then substantially relied on the report as the basis for finding the

claimant was no longer disabled. HERE Judge Rodriguez did more that abuse his discretion he denied Sarhan a Trial to protect Halim from being cross examined by Sarhan's attorney, to show that Halim has committed Mortgage Fraud and lives across the street from Sarhan and family.

33. The Court reviews limitations on the scope of cross-examination for "a clear abuse of discretion." *United States v. Maxwell*, 579 F.3d 1282, 1295 (11th Cir. 2009). However, we address de novo the question of whether a defendant's Sixth Amendment rights were violated. *United States v. Ignasiak*, 667 F.3d 1217, 1227 (11th Cir. 2012).

34. In *Perales*, the Supreme Court also noted that the "extent to which procedural due process must be afforded [to a party] is influenced by the extent to which he may be 'condemned to suffer grievous loss.'" 402 U.S. at 401-02 (citing *Goldberg v. Kelly*, 397 U.S. 254, 262-63 (1970) (termination of AFDC benefits)). Losing Sarhan's home, Sarhan and family would suffer a grievous loss.

35. Similarly, the extent to which "credibility and veracity are at issue" *Richardson v. Perales*, 402 U.S. 389, 408 (1971) may have a bearing on the propriety of receiving evidence where there has been no effective opportunity to confront the adverse witnesses. For example, Connecticut has upheld the use of written reports of dentists who were not biased or interested in a license proceeding, *Altholtz v. Conn. Dental Comm'n, 4 Conn. App.* 307, 311-14, 493 A.2d 917, 921-22 (1985), but has rejected the hearsay affidavits of accident witnesses in a driver's license revocation proceeding, *Carlson v. Kozlowski*, 172 Conn. 263, 268, 374 A.2d 207, 209 (1977).

36. So, for example, in a contested case where a licensee is charged with making fraudulent representations, consideration of the "potential for loss of livelihood" as for the Appellant, "who has not practice medicine in 10 years," witness credibility would appear to swing the scales in

16

favor of an absolute right to confront the adverse witnesses. A licensee may also argue that licensing proceedings are quasi-criminal and may attempt to invoke the Sixth Amendment right "to be confronted with the witnesses against him." *See Padilla v. Minn. Bd. of Med. Exam's*, 382 N.W.2d 876, 883 (Minn. Ct. App. 1986) (holding that the admission of medical records prepared by a physician in a physician disciplinary proceeding does not deny rights to cross-examine or confront witnesses).

37.    Furthermore, it can be argued that under the APA and OAH rules, due process considerations aside, there is a clear and unequivocal right to cross examine that cannot be taken away in the absence of an express statutory provision. In *Perales*, the procedural rules appeared to balance the right to cross-examine by permitting it where necessary for "a full and true disclosure of the facts" 402 U.S. at 409 and by placing hearing procedures "in the discretion of the hearing examiner" as long as they afford "a reasonable opportunity for a fair hearing." The Minnesota APA and OAH rules do not balance the right to cross-examine against the overall procedural fairness afforded by the hearing. For a discussion of the post-*Perales* case law, see *Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise* § 16.8. (3rd ed. 1994)

## PARTIES

38.    Sarhan, a 57-year-old Male, is a natural person, who resides in Miami-Dade County, Florida and owns a home located at 22795 SW 212 Avenue, Miami, Florida 33170 (the Subject Property). He shares his home with his 14-year-old son and is the sole custodial parent. Plaintiff also shares his home and cares for his former wife who suffers from Mental Illness.

39.    Defendant H & H Investors is the mortgage lender organized under the laws of the State of Florida with its principal home address at 21251 SW 228 Street Miami, Florida 33170.

40.    Defendant Ralph Halim is the president of H & H Investors and lives directly across the street from the Plaintiff at 21251 SW 228 Street Miami, Florida 33170.

41.    Raul Gastesi, Jr. individually and as the attorney for H & H Investors and Ralph Halim, is a practicing attorney in the State of Florida and his place of business Gastesi and Associates 8105 NW 155 Street Miami Lakes, Florida 33016.

42.    Thomas Sanders Individually and as the attorney for H & H Investors, Ralph Halim and his office is located at 17635 S. Dixie Highway, Miami, Florida 33157.

43.    Patreeze Pearce is the Court Reporter at Brickell, Gomberg & Associates located at 633 S. Andrews Avenue Suite 202, Fort Lauderdale 33301.

44.    William P. Wakshinsky owner of Brickell, Gomberg & Associates located at 633 S. Andrews Avenue Suite 202, Fort Lauderdale 33301.

45.    Judge Jose M. Rodriguez, as a Judge and Individually; 73 West Flagler Street Miami, Florida 33130 Room: DCC 405.

46.    Judge Rodney Smith, as a Judge and Individually (will use his office address) 73 West Flagler Street Miami, Florida 33130 Room: DCC 1304.

47.    Judge Leslie Rothenberg, as a Judge and Individually, 2001 S.W. 117th Avenue, Miami, FL. 33175

48.    Judge Glenn Salter as a Judge and Individually, 2001 S.W. 117th Avenue, Miami, FL. 33175.

49.    Judge Thomas Logue as a Judge and Individually, 2001 S.W. 117th Avenue, Miami, FL. 33175.

50.    George L. Piro, FBI director in charge, in his official capacity and individually, 2030 S.W. 145 Ave, Miramar, FL. 33027.

51.     Alfredo Duran, FBI Agent, in his official capacity and individually, 2030 S.W. 145 Ave, Miramar, FL. 33027.

52.     Christopher A. Wray, FBI Director, 935 Pennsylvania Ave NW, Washington, DC 20535.

53.     Miami Dade County Risk Management 111 NW 1st St, Ste 2810, Miami, FL 33128

54.     Ron De Santis Governor of Florida 400 S. Monroe St. Tallahassee, FL. 32399

## BACKGROUND AND FACTS OF THE CASE

55.     The Plaintiff, Robert Joseph Sarhan ("SARHAN") purchased the subject property in 8/1/1993 according to property appraiser of Miami Dade County. The subject property is 10 acres of land and the Defendant built his home with his two hands on this subject property.

56.     Sarhan constructed his home of solid cement to protect his horses and family from Hurricane, Tornado's and flooding, because his plans were to live here for the rest of his life.

57.     In 1994, Sarhan built his home to live out his Natural Life then leave his home and property to his only son, Robert Joseph Sarhan, Jr. who is now 14 years old.

58.     Sarhan has lived on the subject property since 1994 and has Never lived anywhere else other than at this address at 22795 SW 212 Avenue Miami, Florida 33170.

59.     Sarhan had horses and lived the life he dreamed of since he was 5 years old, Sarhan went to the University of Florida, University of South Carolina School of Medicine  and Ross University School of Medicine became a medical doctor and worked at the Department of Justice Federal Bureau of Prisons from June 1994 till June 2007, where he was wrongfully terminated for excepting legal advice from a prisoner, this case is pending in the United States Supreme Court.

60.     The Defendant, Ralph Halim, (herein known as the "Halim") president of H & H Investors, moved in across the street from the Defendant, around 1998.

19

61.     Halim and Sarhan became friends, the Halim used to come to the Sarhan's home daily, sometimes three times per day, and would see what Sarhan was working on in building his home.

62.     While the Sarhan was building his home the Halim offered to assist with a second mortgage in 2006 of $70,000 to finish the home. At this time, Sarhan was currently working for the Department of Justice Federal Bureau of Prisons, as a doctor being paid a Physician Assistant salary, due to not having a State of Florida medical license.

63.     In June of 2007, Sarhan lost his job wrongly and was unemployed. Halim stated, "don't worry Robbie I have a lot of money and I am doing nothing with it, I will pay off your mortgage with Coconut Grove bank, which was about $120,000.00."

64.     Halim knew me personally and knew Sarhan had no source of income, no savings and no assets other than my property, however Sarhan trusted Halim, because I thought he was just being a great friend and coming to help, however this was not the case.

65.     Halim set out to intentionally steal the Sarhan's property, by also giving him a loan that Halim knew Sarhan could not repay, it was a Predatory Loan, with $350.000.00 with a balloon payment in 3 years, 10.5% interest and other violations of the Florida Fair Lending Act, TILA, HOEPA and Other Federal Regulated Acts to protect home owners from Predatory Lenders. Halim also took $36,000.00 in interest out of the loan for himself, so Sarhan was paying interest on top of interest.

66.     However, Sarhan trusted Halim because Sarhan thought we were friends and  Sarhan was desperate to save his home. Halim urged Sarhan to take the loan and came to the Sarhan's home and said, "I am not going to lose the $70,000.00 if Coconut Grove Bank Forecloses on your property so you have to take the loan, he said, "don't worry Robbie, I have a lot of money and I am not doing anything with it, I will help you.

67.     At the time of signing the loan with Halim's attorney, Thomas Sanders, we could not afford an attorney but trusted Halim, he was our friend and neighbor. However the last document that he wanted us to sign was an affidavit stating, "that we do not live on the property." Sarhan and Wife Anabella stated to Mr. Sanders, "but we do live on the property this is our home," and Ralph lives across the street, he is our neighbor, you know this, Sanders said, Ralph told me if you want the loan you have to sign this affidavit, go ahead and sign it is no big deal," I said, but I have lived on my property since 1994 and our son, my wife we all live there, Sanders said, "if you want Coconut Grove Bank to be paid off and save your home from foreclosure, Halim want you to sign this affidavit." Sarhan was scared desperate of losing his home and felt that maybe Halim wanted me to sign this affidavit because Sarhan did not have the Certificate of Occupancy on our home, so we signed, we trusted Ralph, we thought he was our friend, we realize now that we made a mistake. Thomas Sanders already had a prepared affidavit with my mother's home address on it, so the affidavit shows Pre-Meditation to Steal our home. **(EXHIBIT C)(EXHIBIT D)**

68.     Sarhan and ex-wife now know the reason why Halim wanted Sarhan and ex-wife to sign the affidavit now, to get around the Florida Fair Lending Act, if the property is an investment property and not a Homestead Property, the Predatory Loan laws do not apply. Sarhan has lived in his home for 25 years and has never lived anywhere else. This was a Predatory Loan and violated the Florida Fair Lending Act, FS, 494.00791(6) which was in affect at the time of the loan:

> "a lender making a high cost home loan shall not engage in any pattern or
> practice of extending high cost home loans to borrowers collateral without
> regards to the borrower's ability to repay the loan, including the borrowers
> current and expected income, current obligations and employment."

69. That provision invalidated the three-year $350,000 balloon mortgages on the mortgagor's [Sarhan's] residence, which violated FS 494.00791(3). **(EXHIBIT E)**

70. The mortgage required a prepayment penalty for the first year violated FS 494.0079(1)(a).

71. The terms of the loan were prohibited which more than two periodic payments required under the loan consolidated paid in advance, the lender required a whole year interest of $36,000.

72. Also was prohibited was FS 494.00791(2) which prohibits a higher rate of interest after default.

73. In 2010, Halim received a judgment of foreclosure, without any evidentiary hearing in November 2010 by Judge Reyes, Defendant filed an Appeal and won the Appeal in the Third DCA, stating that the Stipulation did not give them a right to foreclose.

74. In 2012, Halim, now has a new lawyer named Raul Gastesi Jr. (hereinafter "Gastesi") and files a lawsuit for foreclosure again. In three amended complaints and 10 years, Sarhan continues to plead the Same Affirmative Defenses, that this is a Predatory Loan with Unclean Hands.

75. **Until this day, there has Never been an Evidentiary Hearing in this Case**, Gestasi has committed extrinsic fraud and Fraud on the Court every time he goes into a courtroom or files a document, knowing that this is the Sarhan and his families homestead property and received a judgment by Judge Jose Rodriguez which was a product of Due Process violations, Extrinsic Fraud and Fraud on the Court and a Stipulation agreement that was void and against public policy which is an illegal loan.

76. On May 6, 2014, Sarhan had to file a restraining order against Halim for **Stalking** our young son and ourselves. Halim lives directly across the street from Sarhan. Halim has followed the Sarhan and his young son while riding a motorcycle, scaring our son and Halim, because it

22

was well known to Sarhan that the Plaintiff carries a gun in his truck. Halim has followed the Sarhan many times and one time while Sarhan son were getting the mail late at night Halim sped up his truck like he was going to hit us slamming on his breaks and beeping his horn between 9 to 10 at night. Sarhan son was terrified as well as the Sarhan. Halim would see Sarhan pumping gas in his truck and Halim would pull into the gas station and would yell out, Hey Robbie, they Don't Take Food Stamps." Immediately after filing the restraining order which Judge Baraket stated, "Mr. Halim walk out of this Courtroom like you have a restraining orders," weeks later there were dead animals in front of our gait, twice. **(EXHIBIT B)**

77.     **Sarhan has paid the mortgage for the last 5 years, from 2012 to 2017,** when in August of 20017 Gastesi refused payment. Sarhan has paid $1860.00 and over $50,000.00 dollars in attorney fees and owe more to a former attorneys.

78.     This case has destroyed Sarhan's life, it has caused him sleepless nights, anxiety and many other problems, including financial problems over the last 10 years.

79.     Judge Jose Rodriguez never allowed an evidentiary hearing. Judge Rodriguez denied Sarhan his Constitutional Rights to be Heard and denied Sarhan the Right to cross examine the Lender, Ralph Halim from H & H Investors, Judge Rodriguez protected Halim from cross examination which would have created a record of Fraud, Perjury, Extrinsic Fraud and Mortgage Fraud.

80.     **The trial started on a Friday and a witness name Fernando Bernal Sarhan's neighbor of 25 years testified that Sarhan has always lived on the subject property. Earnest Faust Jr. lived with the Defendant and his son and former wife for 3 to 4 years.** During that time the Defendant and Earnest Faust Jr. worked on a Gospel CD called "Mission Possible" and

23

the Plaintiff served Earnest Faust Jr. my friend a foreclosure suit for harassment purposes, which he had to defend.

81. Halim owns 14 homes, a home across the street from the Sarhan and a home on the Ocean in the Keys, now is trying to steal the Sarhan's property. Sarhan has stated from the beginning of this case, this is a predatory loan, the loan is illegal, unenforceable and this foreclosure case should be dismissed. Sarhan affirmative defenses of a Predatory loan have been pled for the past 10 years.

82. Halim has Unclean Hands is tantamount to unscrupulous practices, over reaching, concealment, trickery, or other unconscientiously conduct, on behalf of the Halim and both his Attorney, Raul Gestasi Jr. and Thomas Sanders which should be disbarred for going along with the Halim in this fraudulent foreclosure scheme. Congress Park Office Condos II, No. 4D11-4479.

83. Under the "Law of the Unclean Hands Doctrine," He who Comes into a Court of Equity must come with Clean Hands, Halim is prohibited therof of receiving equitable relief of foreclosure and foreclosure should be denied.

## STIPULATION AGREEMENT & PREDATORY LOAN & FRAUD

84. This case has been pending for nearly six and a half years since March 1, 2012, when the H&H Investors, Inc. ("H&H") filed its second Complaint for residential foreclosure. Since that date, H & H Investors filed three amended complaints have been filed and Robert Sarhan ("Sarhan") has filed Answers and Affirmative Defenses to each of these complaints. In each of the answers and affirmative defenses, Sarhan has asserted the defense of Predatory Lending and that the loan violated the Florida Fair Lending Act, which was in effect in 2008 when the loan

24

commenced. The various ways that the loan violated FS 494.00791 are discussed in detail herein.

**(EXHIBIT F)**

**Former Attorney Michael Cotzen**

85.     The H&H did not, in any responsive pleading, raise the contention that Sarhan was barred in any way from raising this predatory lending defense. In dozens of conversations with H&H counsel, the Sarhan's counsel Michael Cotzen was never informed that the H&H contends that the Sarhan is barred from raising this defense. Indeed, this case was litigated for five years. Depositions were taken. Documents were exchanged. Interrogatories were answered. There was no assertion made by the H&H that was barred in any way from raising this defense, including in its reply to affirmative defenses.

86.     Trial was scheduled to commence on July 14, 2017 at 1:30 p.m., Sixty-four minutes before the commencement of the trial, at 12:24 p.m., H&H filed a Motion in Limine titled "Plaintiffs Motion in Limine to Exclude any References to Any Improper Acts of Plaintiff Prior to Execution of Settlement Stipulation." In that Motion in Limine, the Plaintiff (H&H) refers to a December 17, 2009 Stipulation of Settlement signed by Sarhan and H&H after the filing of a prior foreclosure action. The Stipulation of Settlement is attached is attached. EX The Stipulation of Settlement states that, "The parties hereto in view of the cost, length, aggravation and the uncertainties of litigation agree to enter into a Stipulation of Settlement which resolves all outstanding issues between the parties through the date hereof." In its Motion in Limine, the Plaintiff, for the first time, makes the leap that through this language, Sarhan agreed to waive the predatory lending defenses that Sarhan raised in the prior action and that Sarhan may not, as a defense to the current litigation, raise any defense based on an act perpetrated by the Plaintiff prior to the date that the agreement was signed. Sarhan, however believed that the Stipulation of

Settlement simply changed the loan's repayment terms similar to a loan modification. **(EXHIBIT G)**

87.     It simply cannot be the case that by signing a settlement agreement that did not specifically mention waiving any type of defense, Sarhan has now waived any defense he may have had to the foreclosure and that the Plaintiff is given a free pass to get away with acts that so clearly violated Florida's Fair Lending Act and were contrary to the public policy of this state. Simply stated, by apparently allowing H&H to perpetrate acts that are prohibited by Florida Statute, this settlement agreement was an illegal contract prohibited under Florida law.

88.     Judge Rodriguez made the determination that the Stipulation of Settlement did include a waiver of the defenses and granted the Motion in Limine. On July 31, 2017, this Court entered a Final Judgment in favor of H&H and against Sarhan. The Final Judgment. **(EXHIBIT H)**

89.     In addition, the only documentary evidencing any intention to raise a predatory lending defense prior to the signing of the Stipulation of Settlement was the November 25, 2009 Motion to Dismiss. A motion to dismiss does not serve to raise any defenses to an action but simply makes arguments as to why the Complaint, based upon the four corners, is untenable. Any arguments made in a motion to dismiss are simply not relevant as they are not defenses to a suit but only statements made by the Defendant. Indeed, the **Court never even ruled on the motion to dismiss.**

90.     There are no disputed issue here, H&H violated the Florida Fair Lending Act. However, the Court refused to hear any evidence on this issue and instead granted the Motion in Limine, the Judge used this Motion in Limini as a Summary Judgment and granted a judgment against Sarhan, violating Sarhan Procedural Due Process Rights, which means that the judgment is **Void Ab Initio.**

91.     The Judge is Corrupt and legally  wrong and believed that Sarhan holding that the Defendant was not ever permitted to raise this defense. Through its decision to grant the Motion in Limine, this Court has enforced an illegal contract that allows the Plaintiff to successfully violate a Florida Statute, prey on a homeowner who was clearly unable to comply with the terms of a loan and permit this predatory lender to extricate a homeowner from a home that he built and has lived in for more than 24 years. Further, "it is reversible error for a trial judge to deny a party an evidentiary hearing to which [the party] is entitled." Avi-Isaac v, Wells Fargo Bank, N.A., 59 So. 3d 174, 177 (Fla. 2d DCA 2011) (quoting Sperdute v. Household Realty Corp., 585 So. 2d 1168, 1169 (Fla. 4th DCA 1991).

92.     This Court is a Court of equity and should absolutely not allow a Predatory Lender to remove a borrower from his home by enforcing a <u>Patently Illegal Contract</u> which justifies the <u>violation of a Florida Statute</u> and Laws of the State of Florida. This is an unjust and unfair result.

93.     The Stipulation or Settlement Agreement is against Public Policy, Illegal and is the result of Fraud and Fraudulent Inducement. Moreover, the agreement did not include a waiver of any defenses, such Sarhan argued at length at the hearing on the Motion in Limine that the agreement was Ambiguous. The Court did not agree, there was Nothing in the Agreement that stated Sarhan waived his rights to a Predatory loan, it was just a loan modification to decrease the interest. Therefore, Judge Jose Rodriguez approved an illegal loan to assist in the theft of the Sarhan home, you must review the reports of Judge Rodriguez Robing Room Reports. He has been Corrupted long before Sarhan entered his Courtroom. See (**EXHIBIT I**)

96.     Any reasonable person would believe that Judge Rodriguez ruled in favor of H&H because he made some type of deal with Gastesi, he violated his Oath of Office and committed treason against the United States Constitution. Rodriguez is legally wrong and has no authority

to go against Congress and the Legislature by approving an illegal loan that violates Florida Statutes and Florida Laws.

97. The Stipulation agreement was not only against Public Policy but when drafting a Stipulation Agreement, there must be the meeting of the minds, so that both sides agree to what the Stipulation stands for and means. Sarhan in no way agreed to waive his Rights to claim this is a Predatory Loan and therefore the Stipulation said nothing about a Predatory loan. After 5 years of litigation Gastesi comes up with the Motion in Limini 64 minutes before the Trial, therefore any reasonable person would believe that the Rodriguez was involved with Gastesi and giving the idea of filing a Motion in Limini so Rodriguez can rule in his favor. Sarhan never waived his defenses of Predatory Lending. Finally, the Settlement Agreement should be set aside as it is an illegal contract that permits H&H to get away with its acts of predatory lending acts that violated Florida Statutes.

## THE SETTLEMENT AGREEMENT IS AN ILLEGAL CONTRACT

98. Based upon the foregoing, it is evident that the result of the Settlement Agreement would be to permit the Plaintiff to get away with its illegal and improper acts of Predatory Lending which violate Florida Statutes. This Court should not permit the Plaintiff to justify its acts simply because of the Stipulation of Settlement which is also against Public Policy. **(EXHIBIT F)**

99. The right to contract is subject to the limitation that the agreement must be legal. In general, Florida courts are under no obligation to discern the intent of the parties from language contained within an illegal contract. E.g., Kat: v. Woltin, 765 So.2d 279 (Fla. 4th DCA 2000) (recognizing that where a contract is illegal. no action may be brought on it, whether in law or in equity); Castro v. Sangles. 637 So.2d 989 (Fla. 3d DCA 1994) (holding that no action may be

maintained on an illegal agreement). One Harbor Fin. Co. v. Hynes Properness. LLC, 884 So. 2d 1039, 1045 (Fla.1st DCA 2004).

100. The courts will not enforce an obligation alleged to arise out of an illegal agreement. Castro v. Sangles, 637 So. 2d 989 (Fla. 3d DCA 1994); Spiro v. Highlands General Hosp., 489 so. 2d 802 (Fla. 2d DCA 1986); Gonzalez v. Trujillo, 179 so. 2d 896 (Fla. 3d DCA 1965). Whether the contract violates an express provision of law or is against public policy, it will not generally be enforced Castro v. Sangles, 637 So. 2d 989 (Fla. 3d DCA 1994); Local No. 234 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada v. Henley & Beckwith, Inc., 66 So. 2d 818 (Fla. 1953).

101. Stated differently, illegality is a compelling reason not to enforce a contract. Jupiter Medical Center, Inc. v. Visiting Nurse Ass'n of Florida, Inc., 72 So. 3d 184 (Fla. 4th DCA 2011). Where the parties to an agreement that violates a constitution or statute are in pari delicto, the law will leave them where it finds them. Harris v. Gonzalez, 789 So. 2d 405 (Fla. 4th DCA 2001). In either case, courts must refuse to grant relief because of public interest. Patterson v. Law Office of

Lauri J. Goldstein, P.A., 980 so. 2d 1234 (Fla. 4th DCA 2008); Harris v. Gonzalez, 789 so. 2d 405 (Fla. 4th DCA 2001).

102. An agreement that violates a constitutional provision, or a statute, or that cannot be performed without violating one or the other, is illegal and void and will not be enforced. Local No. 234 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada v. Henley & Beckwith, Inc., 66 So. 2d 818 (Fla. 1953); City of Miami v. Benson, 63 so. 2d 916 (Fla. 1953); Wegmann v. Mannino, 253 F.2d 627 (5th Cir. 1958); MCA Television Ltd. v. Public Interest Corp., 171 F.3d 1265 (I Ith Cir. 1999); De Lage Landen

29

Financial Services, Inc. v. Cricket's Termite Control Inc., 942 so. 2d 1001 (Fla. 5th DCA 2006);

Bond v. Koscot Interplanetary, Inc., 276 so. 2d 198 (Fla. 4th DCA 1973).

103.    The principle that courts will not enforce illegal contracts is well established and is

founded upon public policy, i.e., objection which avoids illegal contract comes from the public at

large who

demand that there be no legal remedy for that which is itself illegal. Gonzalez v. Trujillo, 179 So.

2d 896 (Fla. 1st DCA 1965).

104.    Contracts that are contrary to public policy are void, illegal, and unenforceable. Vacation

Beach, Inc. v. Charles Boyd Const., Inc., 906 So. 2d 374 (Fla. 5th DCA 2005); Local No. 234 Q/

United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and

Canada v. Henley & Beckwith, Inc., 66 So. 2d 818 (Fla. 1953); City of Miami v. Benson, 63 so.

2d 916 (Fla. 1953); John Hancock-Gannon Joint Venture [IV. McNully, 800 so. 2d 294 (Fla. 3d

DCA 2001); Tardif v. People for Ethical Treatment of Animals, 829 F. Supp. 2d 1219 (M.D. Fla.

2011). Such contracts are void because they have no legal sanction and establish no legal bond

between the parties. Local No. 234 of United Ass'n of Journeymen and Apprentices of Plumbing

and Pipefitting Industry of U.S. and Canada v. Henley & Beckwith, Inc., 66 So. 2d 818 (Fla.

1953). A contract is void as against public policy where: I) it contravenes an established interest

of society; 2) it is without a lawful consideration; or 3) it is injurious to the interest of the public.

McNamara v. McNamara, 40 so. 3d 78 (Fla. 5th DCA 2010); v. Florida Dept. ofChildren and

Families, 816 so. 2d 194 (Fla. 1st DCA 2002); Krezv. sun Bank/South Florida, N.A., 608 so. 2d

892 (Fla. 4th DCA 1992); City of Leesburgv. ware, 113 Fla. 760, 153 so. 87 (1934); Buckland v.

Lewis State Bank, 39 So. 2d 919 (Fla. 1949); McNamara v. McNamara, 40 So. 3d 78 (Fla. 5th

DCA 2010); T.C.B. v. Florida Dept. of Children and Families, 816 so. 2d 194 (Fla. 1st DCA 2002); City of Miami v. Benson, 63 so. 2d 916 (Fla. 1953).

105.    A party generally may not seek to enforce an illegal contract. P. C.B. P'ship v. City of Largo, 549 so. 2d 738 (Fla. 1st DCA 1989).

106.    Here, the Agreement is invalid because it deceptively permits the Plaintiff to successfully violate the Florida Fair Lending Statute, victimize the borrower, Mr. Sarhan, and engage in acts that were very specifically prohibited by the Florida Legislature.

107.    H & H Attorney, Thomas Sanders prepared the Stipulation Agreement and prepared the Mortgage, both were illegal and against Public Policy. Sarhan could not afford an attorney at the time but trusted Halim, he was our neighbor and alleged friend.

108.    When H&H foreclosed, Sarhan then hired an attorney and the attorney pointed out that the Loan and Stipulation Agreement were illegal and Halim took advantage of Sarhan and his family.

109.    Judge Rodriguez had no authority to approve this loan or grant a judgment in favor of H & H, in doing so, Judge Rodriguez violated the Congressional Laws and the Legislature. Judge Rodriguez violated the Procedural Due Process Rights of Sarhan and in doing so he committed Treason against the United States Constitution.

110.    Any Reasonable person would believe that Rodriguez made a deal with Gastesi behind closed doors and is an absolute disgrace. Please see Robing Room Reports (**EXHIBIT I**)

111.    Congress made special laws, TILA, RESPA, FDCPA, FCCPA to protect homeowners from unscrupulous Predatory Lenders, that prey on citizens to steal their properties and or lend money knowing they cannot afford the payments, Halim never did any financial review of Sarhan because he knew Sarhan personally, he knew Sarhan's was unemployed and his only

assets was his home. Halim wanted to give Sarhan a loan because he knew Sarhan could not afford the payments and Halim would end up with the home, Halim lives directly across the street from Sarhan.

## H&H'S LOAN WAS PREDATORY AND VIOLATES, FLA. STAT. § 494.00791

112.    As argued during Defendant's Opening Statement at trial, the loan between Sarhan and H&H violated multiple provisions of the Florida Fair Lending Act, 494.00791 Fla. Stat. The Plaintiff knew this as he had Sarhan sign an affidavit that the subject property was not his primary residence, despite that the Plaintiff— Sarhan's neighbor and close friend at the time — knew that this was not true. **This is Fraud**. The sole purpose of the fraudulent affidavit was to attempt to avoid the application of the Florida Fair Lending Act as non-residential properties are exempt from the Act.

113.    On June 23, 2008, the parties entered into the Promissory Note and Mortgage that is at issue in this case. Sarhan was in desperate need to complete this loan transaction given that his first and second mortgage at the time (the mortgagee of the second mortgage was the Plaintiff) were in default and Sarhan was unemployed, with no assets and no income. He wanted to save the house that he built on his own and was one of the prides of his life.

114.    Sarhan, not surprisingly given his lack of any income, job, or assets, was unable to repay the loan, which included a $350,000 balloon payment due within three years, a clear violation of the Florida Fair Lending Act.

115.    Likewise, the Plaintiff was desperate to enter into the loan as the first mortgagee, Coconut Grove Bank, would soon foreclose on the Plaintiffs second mortgage had it not been refinanced. Plaintiff preyed upon Defendant's desperation. Since the Lender Ralph Halim and

32

Robert Sarhan were neighbors and friend, Ralph said, "don't worry Robbie, I will help you, I have a lot of money and I am not doing anything with it."

## HOW THE LOAN VIOLATED FLORIDA FAIR LENDING ACT

116. Florida Fair Lending Act ("FFLA") specifies that "a lender making a high-cost home loan shall not engage in any pattern or practice of extending high-cost home loans to borrowers based upon the borrowers' collateral without regard to the borrowers' ability to repay the loan, including the borrowers' current and expected incomes current obligations, and employment." § 494.00791 (6), Fla. Stat. (2008).

117. H&H admittedly conducted no financial due diligence and knew that Mr. Sarhan would never be able to repay this loan. H&H knew he had no job. He had no income. He had no assets. H&H did not even bother to conduct a cursory analysis of Sarhan's assets as it knew he had none. Despite this, H&H gave Sarhan a massive loan that it knew he could not repay. This clearly violates § 494.00791 (6) of FFLA, which provides that a lender shall not extend home loans to borrowers based upon borrower's collateral without regard to borrower's ability to repay the loan. including the borrower's current and expected income, current obligations and employment.

118. The Sarhan loan included a provision of a pre-payment penalty for the first year. This violates § 494.00791 (I)(a) which provides that a loan may not contain terns that require a borrower to pay a prepayment penalty for paying all or part of the loan principal before the date on which the payment is due.

119. The loan provided for the payment of a balloon payment representing the entire principal of the loan of $350,000, due three years after the execution of the note and mortgage. This violates § 494.00791(3), which states that a home loan having a term of less than 10 years may

33

not contain terms under which the aggregate amount of the regular periodic payments would not fully amortize the outstanding principal balance.

120. The loan required Sarhan to immediately prepay an entire year of interest, totaling $36,750.00. This violates FS 494.00791(5), which prohibits terms in a home loan under which more than two periodic payments required under the loan are consolidated and paid in advance from the loan proceeds provided to the borrower. This gave Sarhan the inaccurate assumption that he could repay the loan, when he could not.

121. Interest under the loan increased from 10.5% to 18% upon a default. This violates 5 494.00791 (2) which provides that a home loan may not provide for a higher interest rate after default on the loan.

122. The origination of the loan was offered by H&H to Sarhan's loan without a prearranged appointment on an emergency basis. Essentially, H&H demanded that Sarhan agree to this new loan with H&H so that H&H could alter its position as the first mortgage. This violate § 494.00791 (12), which provides that a home loan may not be made as a direct result of a potential or future lender or its representative offering or selling a home loan at the residence of a potential borrower without a pre-arranged appointment with the potential borrower or the expressed invitation of the potential borrower.

123. The loan included high points and fees amounting to six percent (6%) of the loan) which violates § 494.0078(2)(a), and which places the loan as one that must abide by the restrictions of the Florida Fair Lending Act.

## SETTLEMENT AGREEMENT WAS A PRODUCT OF FRAUD

124. Judge Rodriguez knows that the Settlement Agreement does not bar Sarhan from raising that this is a Predatory Loan and a Predatory Loan cannot be approved by a Judge, it is an illegal

34

loan, Judge Rodriguez is going against Congress and the Florida Legislature. This is where the Judge becomes a very serious part of the Conspiracy and Racketeering, Gastesi and Rodriguez had ex-parte meeting or conversations about what Gastesi should file, so the Judge can rule in his favor.

125. The Settlement Agreement does not bar Sarhan from raising the defense that the loan was predatory. However, Judge Rodriguez has permitted the Lender H&H to get away with acts of predatory lending and violations of the Florida Fair Lending and Federal Laws that protect home owners. H&H deceptively convinced a desperate homeowner to sign yet another document in an attempt to save his home, this is Fraudulent Inducement which is illegal.

126. Sarhan understands that the Stipulation for Settlement was signed approximately nine years ago and the time period between that time and this motion is large. However, Sarhan had absolutely no indication that H&H believed that the agreement barred the defenses that he raised as the agreement did not specifically say so, nor was that term negotiated. As a result, the agreement should be set aside because: 1) it is an illegal contract; 2) Sarhan mistakenly signed the agreement as he would have never signed an agreement that waived his important predatory lending defense; and 3) the agreement was a byproduct of mistake and fraud.

**SETTLEMENT AGREEMENT IS VOID BECAUSE IT IS AN ILLEGAL CONTRACT**

127. The Settlement Agreement void for the same reasons indicated above demonstrating that it is an illegal contract that violates Florida Statutes and hence cannot be enforced.

> **THE SETTLEMENT AGREEMENT IS VOID BECAUSE THERE WAS NO MEETING OF THE MINDS IN THE CREATION OF THE SETTLEMENT AGREEMENT BECAUSE SARHAN & H & H BOTH NEVER INTENDED TO BAR SARHAN IN RAISING A PREDATORY LENDING DEFENSE SINCE THE SETTLEMENT AGREEMENT NEVER MENTIONS PREDATORY LENDING**

128. On December 7, 2009, before the Stipulation for Settlement was signed, Rafael Halim, H&H's president, sent a letter to Sarhan that documented the terms of his settlement proposal. This letter is attached as (**EXHIBIT J**). He specifically confirmed the terms that were proposed in this letter. <u>Nowhere in this proposal does he inform Sarhan that it is his understanding that the Settlement Agreement would have the of Sarhan waiving any of his defenses to a foreclosure.</u> Why? Because it did not.

129. Therefore, to the extent that any of the parties, and this Court, now believe that this was the intent of the agreement, it should be set aside or it is simply void. The agreement was never intended — by either party - to have this result.

130. At the time that the settlement agreement was procured, it was procured through fraud and as a result, the agreement is void. Part of the fraud were the statements by Plaintiff and its counsel that the property was an investment property that was not the Defendant's residence when they all knew this not to be true.

131. Contract law governs settlements. Zimmerman v. Olympus Fidelity Trust, LLC, 847 So. 2d 1101 (Fla. 4th DCA 2003). The court may refuse to enforce or may modify or set aside a settlement agreement obtained by fraud, mistake or by misrepresentation. Bare v. Bare, 120 So. 2d 186 (Fla. 3d DCA 1960); Beidler v. Beidler, 43 so. 2d 329 (Fla. 1949); Kern v. Kern, 291 so. 2d 210 (Fla. 4th DCA 1974); Scales v. scales, 237 so. 2d 50 (Fla. 3d DCA 1970); Leffv. Ecker, 972 so. 2d 965 (Fla. 3d DCA 2007).

132. The terms of a settlement proposal must be devoid of ambiguity, patent or latent and not require later clarification or interpretation. Dryden v. Pedemonti, 910 So. 2d 854 (Fla. 5th DCA 2005).

133. Under Florida law, the unilateral mistake doctrine may be applied to a contract where (I ) the mistake goes to the substance of the agreement, (2) the error does not result from an inexcusable lack of due care, and (3) the other party has not relied upon the mistake to his detriment. Roberts & Schaefer Co. v. Hardaway co., 152 F.3d 1283 (11th Cir. 1998).

134. Where one party misunderstands or otherwise makes a unilateral mistake that goes to the substance of the agreement into which it enters, no meeting of the minds occurs, and, thus, no contract exists. Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283 (11th Cir. 1998). The equitable doctrine of unilateral mistake is appropriate for correcting a simple but honest mistake of an innocent party who so changed its position in reliance upon the mistake that it would be unconscionable to rescind the contract or would be impossible to restore the status quo. Roberts & Schaefer co. v. Hardaway co., 152 F.3d 1283 (11th Cir. 1998); Limehouse v. Smith, 797 so. 2d 15 (Fla. DCA 2001).

135. A unilateral mistake may provide basis for rescission of a contract or other equitable relief. Maryland Cas. Co. v. Krasnek, 174 So. 2d 541 (Fla. 1965).

136. Sarhan's understanding of the terms of the Agreement were not the result of his own negligence or lack of foresight, but the result of underhanded and dishonest practices by the Ralph Halim President of H & H. Indeed, Halim never expressed its position that the agreement barred Sarhan defenses for 8 years, and this despite that this action was litigated for 5 years and the night before the signing of this agreement, he never mentions anything about a Predatory Loan The Court should void the Stipulation for Settlement due to this mistake.

## THE SETTLEMENT AGREEMENT IS VOID FOR FRAUDULENT INDUCEMENT, DURESS & UNDUE INFLUENCE

137. In June 2008, when the Settlement Agreement was signed, Sarhan again had no choice but to save his home. The Settlement Agreement only changed the payment history. It did

nothing else. The Mortgage and Note, which was re-incorporated into the Agreement, still contained the same terms that violates the FFLA. Sarhan was still unable to pay back the loan given the lack of employment, income or assets. The loan was still predatory and the Settlement Agreement was only a subsequent document that furthered the Halim's acts of fraud.

138. H & H knew that there was no ability to pay back the loan. Assuming that the Halim knew that the Agreement waived the Defendant's predatory lending defenses- a premise the Defendant disputes- that was likely the primary purpose and intent of the agreement from the Plaintiffs perspective. As this was not communicated to the Defendant in any way, shape, form, the agreement was simply a continuation of the predatory note and mortgage and was a byproduct of Fraudulent Inducement, Undue Influence and Duress.

139. When? a party seeking to set aside a settlement agreement sufficiently pleads duress, coercions or fraud in the inducement, he or she is entitled to a hearing on the merits of the motion. West's F.S.A. RCP Rule I .540(b)(3). Mation v. Lane. 995 So. 2d 1086 (Fla. Dist. Ct. App. 2008).

140. Judge Jose Rodriguez denied Sarhan the Right to a hearing and a Right to be Heard, while violated Sarhan's Constitutional Rights of Due Process and therefore the State Court Judgment is Void. This also supports Sarhan's claim that Judge Rodriguez made a deal with Gastesi for H & H to win, whether Judge Rodriguez took a bribe or for whatever reason, he violated Sarhan's due process rights and this whole case is a product of fraud on the court.

141. If the Court permitted Sarhan to make a speak, it would find that the note and mortgage were a product of fraudulent inducement and undue influence and duress.

142. It would likewise find that the Settlement Agreement was similarly a product of fraud or undue influence. Sarhan was in the same position as before. He had no choice but to sign the

38

agreement that was placed in front of him to avoid the foreclosure. The terms of the mortgage remained the same. If those documents violated the Florida Fair Lending Act, so did the Settlement Agreement.

143.    H & H Attorney, Thomas Sanders prepared the Stipulation Agreement, prepared the Mortgage and Fraudulent Affidavit, all three were illegal and against Public Policy. Sarhan trusted Halim, his neighbor and alleged friend, however it is clear after an attorney pointed out all the Florida Statutes that were violated and was a high cost home loan, against the laws of Congress, who were to help and prevent the American citizens from losing their home due to unscrupulous Predatory Lenders that prey on citizens to steal their properties and or lend money knowing they cannot afford the payments, with Halim never did any financial over view of Sarhan and knew Sarhan was unemployed and his only assets was his home and Halim wanted to steal Sarhan's home because he lives directly across the street from Halim.

144.    H & H Investors, Ralph Halim lives directly across the street from Sarhan. Ralph Halim wanted Sarhan's property, he gave a Bad Faith, Pre-Meditated loan in order to steal Sarhan property. Halim told Sanders to prepare an affidavit with Sarhan's mother's address on it, in order to circumvent the Florida Fair Lending Act, Florida Statues, Predatory Loan and other Federal and State Laws. By Sarhan and wife being forced to sign an affidavit stating they did not live on the property, then the laws that protect homeowners above, only protect homeowners and why Halim wanted us to sign this affidavit. Attorney Thomas Sanders went along with Halim and prepared the affidavit and fraudulent mortgage which was against Florida Statutes and an Illegal Loan. However Sarhan and wife were forced to sign due to losing their home which is a hardship.

39

145. Thomas Sanders was told by Sarhan and Wife we live here on the property, his exact words were, "I don't know why Ralph wants you to sign this but if you don't sign you don't get the loan and lose your home to foreclosure."

146. In the first case, case number 09-74988, Halim never objected to Judge Israel Reyes when attorney Paul Angueira stated "that the money from the loan was used to purchase materials to resolve these problems with Miami Dade County Building and Zoning Unsafe Structure. These materials were used to finish Sarhan's home and apply for a Certificate of Occupancy.

147. Paul Angeira questioned Halim and asked, "Did you draw the sketch of the floor plans?" Halim answered Yes. **(EXHIBIT K)** Paul Angeira, "the issue is with the "house" with respect to unsafe structure were known by the Plaintiff. He agreed, he gave my client a loan to purchase materials to resolves these problems. Halim never objects or says a word because these statements are truthful, the money was to finish Sarhan's home.

148. The above testimony describes ten years of Mortgage Fraud, Fraud of Fraud on the Court and Extrinsic Fraud along with the other crimes. These transcripts above show that Halim and Sanders has engaged in a Conspiracy to steal Sarhan's property. The affidavit that was forced upon Sarhan and his wife to sign or lose their home to foreclosure, was a product of Fraudulent Inducement in order to steal Sarhan's property in the near future. Thomas Sanders the drafter of the affidavit was prepared prior to Sarhan and his Wife coming in to sign the loan papers, which shows this loan was premeditated to steal Sarhan's property.

149. Sanders knew that Sarhan, Wife and Son lived directly across the street from Halim but he still drafted the fraudulent affidavit, when a lawyer drafts a document known to be illegal he has engaged in fraud 8 U.S. Code § 1324c - Penalties for document fraud is subject to a fine of

not more than $1,000 and/or imprisonment for up to six months. Persons who, with unlawful intent, engage in the counterfeiting of alien registration **documents**, may be subject to a fine of up to $5,000 and/or imprisonment for up to five years.

150. This is a case of Mortgage Fraud between two former alleged friends and neighbors for over ten years, where the lender and lenders attorney, Thomas Sanders have committed Fraudulent Inducement and "Extrinsic Fraud" in order to receive a judgment in their favor, which justifies Non-Enforcement of this judgment, which not ought to be. This is not a valid judgment due to Violation of Due Process, Violation of the 14th Amendment, Violations of 42 USC § 1983, Bribery of a State Judge (Florida Statue 838.015) and Extrinsic Fraud, where Sarhan was denied the right to cross examine the lender and denied a Foreclosure Trial. Laufer v. Westminster Brokers, Ltd., 532 A.2d 130, 133 (D.C.1987). In reaching that conclusion, the District of Columbia Court of Appeals relied on United States v. Throckmorton, 98 U.S. 61, 25 L. Ed. 93 (1878). According to that case and in this case, "Extrinsic Fraud" occurs when, "by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case"— as, for example, "[w]here the unsuccessful party has been prevented [by fraud] from exhibiting fully his case." United States v. Throckmorton, 98 U.S. at 65. Extrinsic fraud may thus be described as "fraudulent conduct by the prevailing party that deprived the losing party of an adequate opportunity to present its case to the court." 3 Ved P. Nanda & David K. Pansius, Litigation Of International Disputes In U.S. Courts § 20:15 (2d ed. 2009) (citation and internal quotation marks omitted); accord In re Estate of Delaney, 819 A.2d 968, 981 n. 4 (D.C.2003).

151. As the Eleventh Circuit has stated numerous times: Fraud upon the court . . . embrace[s] only that species of fraud which does or attempts to defile the court itself, or is a fraud

41

perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Zakrzewski v. McDonough, 490 f.3d 1264, 1267 (11th Cir. 2007) (internal quotations and citations omitted). This Court has provided examples of what constitutes a fraud upon the court: Fraud which attempts to defile the court has been construed to include only the most egregious conduct, such as bribery of a judge or members of a jury; the fabrication of evidence by a party in which an attorney has been implicated; or the employment of counsel to 'influence' the court. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S. Ct. 997, 88 L. Ed. 1250 (1944); Root Refin. Co. v. Universal Oil Products, 169 F.2d 514 (3rd Cir. 1948); Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir. 1978); 7 Moore, Federal Practice P 60.33, at 512. Williams, 90 F.R.D. at 142. As can be seen, fraud, for purposes of 60(d)(3), is not a mere misrepresentation. The Petitioner is able to prove to this court, that the level of Fraud rises too and exceeds the level to a Fed. R. Civ. P. Rule 60(d)(3) claim.

152.    This state court foreclosure judgment is a "VOID JUDGMENT," therefore it has no force or effect. The state court judge acted in a manner inconsistent with "Due Process" and denied the Plaintiff his Rights to Be Heard in the state court. The validity of a judgment may be affected by a failure to give the constitutionally required due process notice and an opportunity to be heard. Earle v. McVeigh, 91 US 503, 23 L Ed 398. See also Restatements, Judgments ' 4(b). Prather v. Loyd, 86 Idaho 45, 382 P2d 910. A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights. Sabariego v Maverick, 124 US 261, 31 L Ed 430, 8 S Ct 461, and is not entitled to respect in any other tribunal. "A void judgment does not create any binding obligation. Federal decisions addressing void state court

42

judgments include Kalb v. Feuerstein (1940) 308 US 433, 60 S Ct 343, 84 L ed 370; Ex parte Rowland (1882) 104 U.S. 604, 26 L.Ed. 861:

153. "A judgment which is void upon its face, and which requires only an inspection of the judgment roll to demonstrate its wants of vitality is a dead limb upon the judicial tree, which should be lopped off, if the power to do so exists." People v. Greene, 71 Cal. 100 (16 Pac. 197, 5 A.m. St. Rep. 4481. "If a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void." (Freeman on Judgments, 120c.) An illegal order is forever void.

154. As specifically noted in the attached U.S. Supreme Court case law it is a fundamental doctrine of law that a party to be affected by a personal judgment must have his day in Court and an opportunity to be heard' Renaud v. Abbott, 116 US 277, 29 L Ed 629, Co S. Ct 1194. 'Every person is entitled to an opportunity to be heard in a Court of law upon every question involving his rights or interests, before he is affected by any judicial decision on the question. Earle v. McVeigh, 91 US 503, 23 L Ed 398. Judge Rodriguez and Judge Smith denied Sarhan a right to be heard, so there is no record of the Corruption taking place in these two Courts.

155. The state court judgment is a "VOID JUDGMENT" because this residential home loan, is a Predatory Loan, which violates State and Federal Laws and against Public Policy. Contracts that are contrary to public policy are void, illegal, and unenforceable. Vacation Beach, Inc. v. Charles Boyd Const., Inc., 906 So. 2d 374 (Fla. 5th DCA 2005); Local No. 234 Q/ United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada v. Henley & Beckwith, Inc., 66 So. 2d 818 (Fla. 1953); City of Miami v. Benson, 63 so. 2d 916 (Fla. 1953); John Hancock-Gannon Joint Venture [IV. McNully, 800 so. 2d 294 (Fla. 3rd DCA 2001). Tardif v. People for Ethical Treatment of Animals, 829 F. Supp. 2d 1219 (M.D. Fla.

2011).3d DCA 2001); Tardif v. People for Ethical Treatment of Animals, 829 F. Supp. 2d 1219 (M.D. Fla. 2011). The Plaintiff Sarhan has filed Answers and Affirmative Defenses, asserting the defense of Predatory Lending with Unclean Hands and that the loan violated the Florida Fair Lending Act, which was in effect in 2008 when the loan commenced. 494.00791 (6), Fla. Stat., repealed in 2014, was in effect at the time when the mortgage was executed, It provided:

> " a lender making a high cost home loan shall not engage in any pattern or practice of extending high-cost home loans to borrowers based upon the borrower's collateral without regard to the borrower's ability to repay the loan, including the borrowers current and expected income, current obligations and employment."

156.    That provision invalidated the three-year $350,000 balloon mortgages on the mortgagor's [Sarhan's] residence. In fact, the mortgaged property was Sarhan's residence and Halim's residence, President of H & H Investments lived right across the street from Sarhan, Halim used to visit Sarhan daily at his home, they were allegedly friends. Halim admittedly conducted no financial due diligence and knew that Mr. Sarhan would never be able to repay the loan, Halim knew Sarhan had no job, no income, and no assets. The mortgage note required a pre-payment penalty for the first year. That violated 494.00791 (1)(a) which provided that a loan may not contain terms that require a borrower to pay a prepayment penalty for paying all or part of the loan principal before the date on which the payment is due. The three-year balloon violated § 494.00791 (3). Also violated was 494.007691(5), which prohibits terms in a home loan under which more than two periodic payments required under the loan are consolidated and paid in advance from the loan proceeds provided by the mortgagor. Also violated was S 494.00791 (2) which prohibits a higher rate of interest after default. Accordingly, the parties' stipulation to enforce that violative mortgage was against public policy and should be rejected.

157.   The state court judgment is a "VOID JUDGMENT" Florida Supreme Court precedent "leave[s] no doubt that where a [State] Statute indicates with language of an unmistakable mandatory character, that state conduct injurious to an individual will not occur absent specified substantive predicates, the Statute creates an expectation protected by the Due Process Clause." *Ford v. Wainwright,* 477 U.S. 399, 427 (1986)('Connor, J., concurring in part and dissenting in part)(quoting Hewitt v. Helms, 459 U.S. 460, 471-72 (1983)).

158.   The state court judgment is a "VOID JUDGMENT" which was a product of Fraud on the Court in violation of Fed. R. Civ. P. Rule 60(b)(3)(4). Gastesi & Halim, (president of H & H Investors) have committed Fraud on the Court, since Gastesi and Halim are deceiving the Court into believing this is not the Homestead Property of Sarhan and Family in violation of Fed. R. Civ. P Rule 60(b)(3) using a Fraudulently Induced affidavit signed by Sarhan and Wife which was forced upon them by Halim's first attorney Sanders, stating, "if you do not sign this affidavit, you will not get the loan and lose your home to foreclosure, Sarhan and wife signed under Duress."

159.   The state court judgment is a "VOID JUDGMENT" because the State Court Judge Rodriguez was corrupted by Gastesi & Halim. Gastesi and Halim are committing Fraud on the Court, Conspiracy to steal the Sarhan property, Racketeering and many other crimes including Fraudulent Inducement. Moreover, the fraud on the court  is rendered all the more egregious since Gastesi, Rodriguez and Smith are officers of the court, and Rodriguez and Smith is committing treason against the United States Constitution. The "Deal between Gastesi and Rodriguez" was made ahead of July 31, 2017 hearing, where Rodriguez treated Gastesi's Motion In Limini as a Summary Judgement in violation of Sarhan's Constitutional Rights.

.

160.   On October 13, 2017, the judge allowed the Sarhan's attorney Michael Cotzen to withdrawal and stated that the Defendant shall have 20 days to find counsel. Then the plaintiffs, Attorney Raul Gastesi, jumped up and down, waving his hand at the judge, screaming out, "Judge" "Judge" "Judge" NOOOOOOOOOOOOO, not 20 days and the Judge looked directly at Gastesi, made eye contact with Gastesi and the Judge then stated, "I am only going to give you 6 days to find counsel, since this was a Friday afternoon and tomorrow is Saturday, it is impossible to find counsel in 4 working days, to review a case for a Motion for Reconsideration. Please see how Judge Rodriguez crossed out the 20 days and put 6 days.       **(EXHIBIT L)**

161.   A Month later Gastesi entered the Court transcripts into the record to cover up the ex-parte communication with Judge Rodriguez and had Patreeze Pearce alter the court transcripts. **(EXHIBIT M)**

162.   **A void judgment is a nullity, a brutum fulmen…and is subject to collateral attack and may be stricken at any time.   The passage of time cannot make valid that which has always been void. Ramagli Realty v. Craver, 121 So. 2d. 648.** SC11-621 A judgment may not be rendered in violation of constitutional protections.

163.   In order to obtain Injunctive Relief, a plaintiff must establish that "the balance of equities tips in his favor." *Winter,* 129 S.Ct. at 374. The district court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Id. at 376 (quoting *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S.Ct. at 376-77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). The balance of hardships weighs in Plaintiff's favor. This Loan is a Violation of State and

46

Federal Law, which is a Predatory Loan, the Loan is illegal, and the Stipulation is unenforceable because you cannot enforce an illegal contract, therefore the balance of equities tip in Sarhan's favor.

164. Under the unique facts of this case and the record before us, the "Homeowner," Sarhan's allegations are legally sufficient to properly assert the defense of unclean hands. See, e.g., Monetary Funding Grp., Inc. v. Pluchino, 87 Conn. App. 401, 867 A.2d 841 (Conn.App.Ct.2005) (finding that where the borrower was unsophisticated (however trusted the lender because they were friends and neighbors for 20 years) and the lender misled the borrower about the terms of the loan and failed to conduct a bona fide evaluation of the borrower's ability to repay the loan, the trial court was correct to conclude that the borrower's unclean hands defense precluded foreclosure). Green Tree failed to present any meaningful evidence rebutting the allegations underpinning this defense. Therefore, summary judgment was prematurely granted.

165. It is certainly beyond question that "one who comes into equity must come with clean hands else all relief will be denied him regardless of the merits of his claim. It is not essential that the act be a crime; it is enough that it be condemned by honest and reasonable men. "Ocean View Towers, Inc. v. First Fid. Sav. & Loan Ass'n, 521 So.2d 325, 326 (Fla. 4th DCA 1988) (quoting Roberts v. Roberts, 84 So.2d 717, 720 (Fla.1956)). Recently, this court found that unclean hands is tantamount to "[u]nscrupulous practices, overreaching, concealment, trickery or other unconscientious conduct ." Congress Park Office Condos II, No. 4D11–4479 at 6–7 (citation omitted). However in this case the merits in this case has never been argued due to the corruption of Rodriguez and Gastesi.

166. Not only has Raul Gastesi and Halim committed inequitable conduct by committing Fraud on the Court, stating that the subject property is not Sarhan's Homestead Property, has

47

also forced Sarhan to pay 5 years of mortgage payment while in foreclosure but also charged Interest on top of Interest and engaged in Predatory lending and engaged in bribery of Judge Rodriguez to commit severe due process violations and deny Sarhan a Foreclosure Trial. Furthermore, Halim Stalked Sarhan and his minor child to have to get a restraining order which was needed. After the restraining order hearing, two weeks later Halim had dead animals put in front of Sarhan's front gate, twice, to force Sarhan and Family to move. **(EXHIBIT B)** The "unclean hands" doctrine applies only where the particular mortgage is tied to the inequitable conduct. See *Neubeck v. Neubeck*, 94 N.J.Eq. 167, 171, 119 A. 26, 28, 27 A.L.R. 172 (E. & A.1922). Cf. *Mirkin v. Bowker*, 133 A. 41 (Ch.1926). *Leisure Technology-Northeast, Inc. v. Klingbeil*, 137 N.J.Super. 353, 349 A.2d 96 (App.Div.1975) (defense of unclean hands is cognizable in a mortgage foreclosure action). *Associated East Mortgage Co. v. Young*, 163 N.J.Super. 315, 394 A.2d 899 (Ch.Div.1978) (foreclosure was barred by the "unclean hands doctrine" because the mortgagee did not comply with the "face-to-face interview" requirement of § 203.604(b) of HUD regulations).

167. Defendant H & H INVESTORS is a State of Florida Corporation with the owner Ralph Halim's address at 21251 NW 228 Street Miami, Florida 33170.

168. Upon information and belief, H & H Investors is licensed to transact business in the State of Florida and has listed its registered agent as a Florida Corporation, Owner Ralph Halim located at 21251 SW 228 Street Miami Florida 33170.

169. On or around 2006, Defendant H & H Investors provided a second mortgage to finish the Plaintiff's home which is located directly across the street from the Lender, Ralph Halim of H & H Investors. As such , H & H Investors is engaged in the business mortgage lending and lending money secured by real property in the Miami area.

170.   On or around 2009, Defendant H & H Investors wanted to get the first mortgage on the property and provide a mortgage to the Plaintiff to pay off Coconut Grove Bank the first mortgage holder, since the Plaintiff lost his employment and H & H Investors did not want to secure his money if there was a foreclosure. However, affidavit he made the Sarhan's sign, shows the loan was pre-meditated, to steal the Sarhan's home.

## THE FBI FAILURE TO PROTECT SARHAN AND FAMILY IN A MORTGAGE FRAUD SCAM, PUBLIC/JUDICIAL CORRUPTION, COLOR OF LAW VIOLATIONS, CIVIL RIGHTS VIOLATION, WHITE COLLAR CRIME & THE HOBB'S ACT.

171.   On November 16, 2018, Sarhan visited your FBI office in Miramar Florida and met with Officer Duran. Office Duran was very arrogant and disrespectful and by the time I sat down, he was trying to get me to leave. He even threatened me, if I don't get up now, he actually started to grab my folders and seemed like he wanted to get physical. I was there for maybe ten minutes or less. He Never gave me a chance to show him important documents that support my allegations and he did not seem to care. What I thought would be a great day in my life to get help from the FBI due to Mortgage Fraud and Judicial Corruption, Duran made it one of the worst days in my life, he acted like he was a Thug. Officer Duran called Sarhan three days later stating that my problem was a civil matter, we will not be taking your case. Mortgage Fraud and Judicial Corruption are Criminal Acts. On more than one occasion Duran told me to contact the US Attorney's Office, again he absolutely has no idea how the process works, citizens cannot go to the US Attorney's Office, it is only the FBI and Other Agencies. He did this to get me off the phone and caused Sarhan countless hours of wasted time.

172.   Florida Statute 817.545, Mortgage fraud is a second-Degree Felony and very serious penalties can be imposed. Additionally, the crime often involves multiple laws, often on both state and federal levels. As a result, there are many different types of penalties and punishments

49

as well. In almost all cases, it is classed as a felony offense, but if the amount involved is below $1,000, it can be classed as a felony as well. In Florida, if the fraud is less than $100,000, it is charged as a 3rd degree felony. If the fraud involves more than $100,000, it is classed as a second-degree felony.

173.    The FBI Mission statement below, where the FBI have a legal responsibility to protect Sarhan and family from Judicial Corruption, Mortgage Fraud, Civil Rights Violation, Color of Law Violations and Combat White Collar Crime, Sarhan continues to request the FBI to arrest and prosecute, Raul Gastesi, Jr., Ralph Halim, Judge Jose Rodriguez and others in this complaint, if the FBI seems justified.

<b><u>THE FBI MISSION STATEMENT:</u></b>

To be Specific in this Case only, the FBI major priorities are to

> (1) Combat Public Corruption at all Levels
>
> (2) Protect Civil Rights
>
> (3) Color of Law Violations
>
> (4) Combat Major White-Collar Crime
>
> (5) Mortgage Fraud

## (1)COMBAT PUBLIC CORRUPTION AT ALL LEVELS

Public corruption, the FBI's top criminal investigative priority, poses a fundamental threat to our national security and way of life. It can affect everything from how well our borders are secured and our neighborhoods protected to how verdicts are handed down in courts to how public infrastructure such as roads and schools are built. It also takes a significant toll on the public's pocketbooks by siphoning off tax dollars—it is estimated that public corruption costs the U.S. government and the public billions of dollars each year. The FBI is uniquely situated to combat corruption, with the skills and capabilities to run complex undercover operations and surveillance.

**Overview**

The Bureau's Public Corruption program focuses on:

50

- Investigating violations of federal law by public officials at the federal, state, and local levels of government;
- Overseeing the nationwide investigation of allegations of fraud related to federal government procurement, contracts, and federally funded programs;
- Combating the threat of public corruption along the nation's borders and points of entry in order to decrease the country's vulnerability to drug and weapons trafficking, alien smuggling, espionage, and terrorism.
- Addressing environmental crime, election fraud, and matters concerning the federal government procurement, contracts, and federally funded programs.

## (2)CIVIL RIGHTS VIOLATION

The FBI is the primary federal agency responsible for investigating allegations regarding violations of federal civil rights statutes. These laws are designed to protect the civil rights of all persons—citizens and non-citizens alike—within U.S. territory. Using its full suite of investigative and intelligence capabilities, the Bureau today works closely with its partners to prevent and address hate crime, human trafficking, color of law violations, and Freedom of Access to Clinic Entrances (FACE) Act violations.

## (3)COLOR OF LAW VIOLATIONS

U.S. law enforcement officers and other officials like judges, prosecutors, and security guards have been given tremendous power by local, state, and federal government agencies—authority they must have to enforce the law and ensure justice in our country. These powers include the authority to detain and arrest suspects, to search and seize property, to bring criminal charges, to make rulings in court, and to use deadly force in certain situations.

Preventing abuse of this authority, however, is equally necessary to the health of our nation's democracy. That's why it's a federal crime for anyone acting under "color of law" to willfully deprive or conspire to deprive a person of a right protected by the Constitution or U.S. law. "Color of law" simply means the person is using authority given to him or her by a local, state, or federal government agency.

The FBI is the lead federal agency for investigating color of law violations, which include acts carried out by government officials operating both within and beyond the limits of their lawful authority.

## FAILURE TO KEEP FROM HARM:

The public counts on its law enforcement officials to protect local communities. If it's shown that an official willfully failed to keep an individual from harm, that official could be in violation of the color of law statute.

## (4)COMBAT MAJOR WHITE-COLLAR CRIME

51

Reportedly coined in 1939, the term white-collar crime is now synonymous with the full range of frauds committed by business and government professionals. These crimes are characterized by deceit, concealment, or violation of trust and are not dependent on the application or threat of physical force or violence. The motivation behind these crimes is financial—to obtain or avoid losing money, property, or services or to secure a personal or business advantage.

These are not victimless crimes. A single scam can destroy a company, devastate families by wiping out their life savings, or cost investors billions of dollars (or even all three). Today's fraud schemes are more sophisticated than ever, and the FBI is dedicated to using its skills to track down the culprits and stop scams before they start.

Obstruction of justice designed to conceal any of the above-noted types of criminal conduct, particularly when the obstruction impedes the inquiries of the U.S. Securities and Exchange Commission (SEC), Commodity Futures Trading Commission (CFTC), other regulatory agencies, and/or law enforcement agencies.

## (5)MORTGAGE FRAUD

Mortgage fraud is a significant and growing concern in the United States. Mortgage fraud schemes are perpetrated by individuals acting alone or in collusion with borrowers, loan originators, or real estate professionals. All mortgage fraud schemes contain a material misstatement, misrepresentation or omission relied upon by an underwriter or lender to fund, purchase, or insure a loan. Given the significant role of mortgages in our economy, mortgage fraud has been recognized as a significant criminal problem by the FBI and has been treated accordingly. To that end, the Atlanta Field Office (ATFO) has a Mortgage Fraud Working Group which investigates mortgage fraud violations.

Mortgage fraud is a sub-category of FIF. It is crime characterized by some type of material misstatement, misrepresentation, or omission in relation to a mortgage loan which is then relied upon by a lender. A lie that influences a bank's decision—about whether, for example, to approve a loan, accept a reduced payoff amount, or agree to certain repayment terms—is mortgage fraud. The FBI and other entities charged with investigating mortgage fraud, particularly in the wake of the housing market collapse, have broadened the definition to include frauds targeting distressed homeowners.

There are two distinct areas of mortgage fraud—fraud for profit and fraud for housing.

- **Fraud for profit:** Those who commit this type of mortgage fraud are often industry insiders using their specialized knowledge or authority to commit or facilitate the fraud. Current investigations and widespread reporting indicate a high percentage of mortgage fraud involves collusion by industry insiders, such as bank officers, appraisers, mortgage brokers, attorneys, loan originators, and other professionals engaged in the industry. Fraud for profit aims not to secure housing, but rather to misuse the mortgage lending process to steal cash and equity from lenders or homeowners. The FBI prioritizes fraud for profit cases.
- **Fraud for housing:** This type of fraud is typically represented by illegal actions taken by a borrower motivated to acquire or maintain ownership of a house. The borrower may,

for example, misrepresent income and asset information on a loan application or entice an appraiser to manipulate a property's appraised value.

174. Miami Dade County has been known to be one of the most corrupt cities in this country. When my mother Yvonne Sarhan was being kidnapped and forced into a guardianship and our entire estate was stolen the Police Department, the FBI, no one would help my mother. Because a judge was involved, no one wanted to touch this with a ten-foot pole. Even when a judge is corrupt as Judge Rodriguez and others, even the news reporters look the other way.

175. Sarhan contacted the Governor Ron De Santis, he was treated with disrespect by the young girls that answer the phone, then was denied speaking with our Governor and Lt Governor Nunez. While I am losing my home and my life due to corruption, where is our Governor. Where does this stop, Governor Rick Scott allows these Crimes where our parents are being murdered and estates being stolen by a Racketeering Rings that operates right out of the Courtroom. Now we see more of the same from Governor Rod De Santis, an Urgent overnight express mail was sent to Rod De Santis with No Response. Governor Ron De Santis turned his back on our family while our home is being stolen by a corrupt Judge, where there is no law in the Courts. THERE IS NOTHING MORE DANGEROUS THAN A CORRUPT JUDGE- Strachan Partners. KEEPING A REPUBLIC: OVERCOMING THE CORRUPT JUDICIARY, are just some of the topics which we see today in the news, but who is going to bring justice into our Courts, if it is not our Governor?

176. By executive order, the governor may suspend from office any state or county elected official who is not subject to impeachment. The Governor has the power to fill vacancies in office by appointment, according to law. The governor cannot suspend the lieutenant governor, Cabinet members, Supreme Court justices, appellate judges, or circuit court judges. They can be removed only by legislative impeachment.

53

## SUMMARY OF ARGUMENT

WHERE A JUDGMENT IS VOID, ONE MAY MOVE AT ANY TIME SEEKING RELIEF FROM THE JUDGMENT IN ANY COURT.

A JUDGMENT ENTERED WITHOUT AFFORDING THE DEFENDANT A FAIR OPPORTUNITY TO BE HEARD IS A DENIAL OF DUE PROCESS AND VOID.

THE MORTGAGE AND STIPULATION AGREEMENT ARE VOID BECAUSE THEY ARE A PRODUCT OF A PREDATORY LOAN WHICH VIOLATES FEDERAL AND STATE LAWS AND AGAINTS PUBLIC POLICY-THE MORTGAGE AND STIPULATION ARE VOID AB INITIO.

THE MORTGAGE AND STIPULATION ARE VOID DUE TO FRAUDULENT INDUCEMENT, UNDUE INFLUENCE, DURESS.

UNCLEAND HANDS DOCTRINE SINCE THE LENDER HAS UNCLEAN HANDS HE IS NOT ENTITLED TO RELIEF.

WHEN THE JUDGMENT IS A PRODUCT OF FRAUD ON THE COURT, THE JUDGMENT IS VOID

GASTESI WAS IN COLLUSION WITH RODRIGUEZ, WHO ALONG WITH HALIM CONSPIRED TOGETHER TO STEAL SARHAN'S HOME.

GASTESI THEN ENGAGED HIS FORMER CLASSMATE MAGISTRATE JUDGE ALICIA OTAZO REYES TO REMAND THIS CASE BACK TO THE STATE COURT WHERE JUDGE OTAZO REYES WAS WITHOUT JURIDCITION TO RULE UNDE 28 USC 636, WHEN THIS FEDERAL COURT HAD SUBJECT MATTER JURISDICTION

JUDGE JOSE MARTINEZ ADOPTED MAGISTRATE JUDGE OTAZO REYES RECOMMENDATIONS TO REMAND THIS CASE BACK TO THE STATE COURT WHICH WAS A VIOLATION OF SARHAN'S DUE PROCESS RIGHTS AND THE REMAND SHOULD BE REVERESED

THE FBI FAILURE TO PROETCT SARHAN AND FAMILY FROM MORTGAGE FRAUD, JUDICIAL/PUBLIC CORRUPTION, COLOR OF LAW VIOLATIONS, CIVIL RIGHTS VIOLATION, WHITE COLLAR CRIME & THE HOBBS ACT

MIAMI DADE COUNTY AND OUR GOVERNOR HAS DONE NOTHING TO CLEAN UP OUR BEAUTIFUL STATE FOR THE PAST 25 YEARS, IT IS WELL KNOWN THAT KATHLINE RUNDLE HAS ALLOWED CRIMES COMMITTED BY JUDGES TO CONTINUE EVEN WHEN JUDGES TAKE THE LIVES OF OUR PARENTS. I WILL NOT ALLOW MY HOME TO BE STOLEN THROUGH A CORRUPT JUDGE WHILE MIAMI DADE COUNTY AND OUR GOVERNOR LOOK THE OTHER WAY AND ALLOW MY CONSTITUTIONAL RIGHTS AND CIVIL RIGHTS BE VIOLATED BY A STATE JUDGE

## I.   ARGUMENT

### WHERE A JUDGMENT IS VOID, ONE MAY MOVE AT ANY TIME SEEKING RELIEF FROM THE JUDGMENT

177.   "A judgment which is void upon its face, and which requires only an inspection of the judgment roll to demonstrate its wants of vitality is a dead limb upon the judicial tree, which should be lopped off, if the power to do so exists." People v. Greene, 71 Cal. 100 (16 Pac. 197, 5 A.m. St. Rep. 4481. "If a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void." (Freeman on Judgments, 120c.) An illegal order is forever void.

178.   The court erroneously denied Robert Sarhan's motion to vacate the judgment as "Void." A motion seeking relief from a judgment on the ground that it is "Void" may be filed and heard "at any time." McLearn v. Cowen & Co., 660 F.2d 845, 848-49 (2 Cir. 1981) held:

> "The proper route by which plaintiff should have sought relief from the 1976 dismissal would have been a motion under Fed.R.Civ.P. 60(b)(4) to vacate the judgment for lack of jurisdiction. Such a motion may be brought at any time after final judgment. See Crosby v. Bradstreet Co., 312 F.2d 483 (2d Cir. 1963), cert. denied, 373 U.S. 911, 83 S. Ct. 1300, 10 L.Ed.2d 412. However, plaintiff's failure to bring his *849 motion under Rule 60(b)(4) is not fatal. It is well settled that a court may raise the issue of subject matter jurisdiction at any time, sua sponte. E. g., Clerk v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); see United States v. Burmah Oil Co. Ltd., 558 F.2d 43, 46 (2d Cir.), cert. denied, 434 U.S. 967, 98 S. Ct. 511, 54 L.Ed.2d 454 (1977)."

Gschwind v. Cessna Aircraft Co., 232 F.3d 1342, 1345-46 (10 Cir. 2000), cert. denied, 533 U.S. 915 |(2001) likewise held:

> "Rule 60(b) provides in part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void." Fed. R. Civ. P. 60(b)(4) (2000). "Rule 60(b)(4) ... is not

55

subject to any time limitation." Orner v. Shalala, 30 F.3d 1307, 1310 (10th Cir.1994) (internal quotations and citations omitted)."

179. An order that exceeds the jurisdiction of the court, is void, or voidable, and can be attacked in any proceeding in any court where the validity of the judgment comes into issue. (See Rose v. Himely (1808) 4 Cranch 241, 2 L ed 608; Pennoyer v. Neff (1877) 95 US 714, 24 L ed 565; Thompson v. Whitman (1873) 18 Wall 457, 21 1 ED 897; Windsor v. McVeigh (1876) 93 US 274, 23 L ed 914; McDonald v. Mabee (1917) 243 US 90, 37 Sct 343, 61 L ed 608. U.S. v. Holtzman, 762 F.2d 720 (9th Cir. 1985) ("Portion of judgment directing defendant not to import vehicles without first obtaining approval ... was not appropriately limited in duration and, thus, district court abused its discretion by not vacating it as being prospectively inequitable." Id at 722.

180. A Judgment Is A "Void Judgment" If The Court That Rendered The Judgment Acted In A Manner Inconsistent With Due Process *Klugh v. U.S. D.C.S.C,* 610 F. Supp. 892, 901 states: a judgment is a "void judgment" *if the court that rendered judgment... acted in a manner inconsistent with due process.*"

181. A judgment is void if the rendering court acted in a manner inconsistent with due process of law. Wright & Miller, Federal Practice and Procedure § 2862. "A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." World-Wide Volkswagen Corp. V. Woodson, 444 U.S. 286 (1980). "[T]he constitution, by prohibiting an act, renders it void, if done; otherwise, the prohibition were nugatory. Thus, the warrant is a nullity." Anderson v. Dunn, 19 U.S. 204, 217 (1821). "'No judgment of a court is due process of law, if rendered without jurisdiction in the court, or without notice to the party." Old Wayne Mut. Life Ass'n v. McDonough, 204 U.S. 8, 15 (1907). Generally, a judgment is void under Rule 60 (b) (4) if the court that rendered it lacked

56

jurisdiction of the subject matter, or of the parties, or if acted in a manner inconsistent with **due process of law**. E.g., s **Burke v. Smith**, 252 F.3d 1260 (11th Cir. 2001); **U.S. v. Boch Oldsmobile**, Inc., 909 F.2d 657, 662 (1st Cir. 1990);**Beller & Keller v. Tyler**, 120 F.3d 21, 23 (2nd Cir. 1997); **Union Switch & Signal v. Local 610**, 900 F.2d 608, 612 n.1 (3rd Cir. 1990); **Eberhardt v. Integrated Design & Const., Inc**. 167 F.3d 861, 867 (4th Cir. 1999); **New York Life Ins. Co. v. Brown** 84 F.3d 137, 143 (5th Cir. 1996).

## II.    ARGUMENT

### A JUDGMENT ENTERED WITHOUT AFFORDING TO THE DEFENDANT A FAIR OPPORTUNITY TO BE HEARD IS A DENIAL OF DUE PROCESS AND VOID

182.    The judgment entered without affording to Robert Sarhan any fair opportunity to be heard was a denial of due process and Void. Since Gastesi filed a Motion in Limini 64 minutes before the trial, Judge Rodriguez treated that Motion in Limini as a Summary Judgment. Judge Rodriguez denied Sarhan a trial, denied the Defendant Sarhan a right to be heard and denied him the right to cross examine the lender, this is judicial corruption and severe due process violations. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. The Judge denied Sarhan an evidentiary and granted a judgment to the Plaintiff and approved a Predatory loan, an illegal loan against State and Federal Law and against Public Policy. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271 (2010) held:

> "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.

57

See United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661 (C.A.1 1990); Moore's § 60.44[1][a]; 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2862, p. 331 (2d ed.1995 and Supp.2009); cf. Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Stoll v. Gottlieb, 305 U.S. 165, 171-172, 59 S.Ct. 134, 83 L.Ed. 104 (1938)."

183.    **A judgment may NOT be rendered in violation of Constitutional Protections:**

The validity of a judgment may be affected by a failure to give the constitutionally required due process notice and an opportunity to be heard. Earle v. McVeigh, 91 US 503, 23 L Ed 398. See also Restatements, Judgments ' 4(b). Prather v Loyd, 86 Idaho 45, 382 P2d 910.

The limitations inherent in the requirements of due process and equal protection of the law extend to judicial as well as political branches of government, so that a judgment may not be rendered in violation of those constitutional limitations and guarantees. Hanson v Denckla, 357 US 235, 2 L Ed 2d 1283, 78 S Ct 1228.

A void judgment is not entitled to the respect accorded a valid adjudication, but may be entirely disregarded, or declared inoperative by **any tribunal** in which effect is sought to be given to it. It is attended by none of the consequences of a valid adjudication. It has no legal or binding force or efficacy for any purpose or at any place. ... It is not entitled to enforcement ... All proceedings founded on the void judgment are themselves regarded as invalid. 30A Am Jur Judgments " 44, 45.

It is a fundamental doctrine of law that a party to be affected by a personal judgment must have his day in court, and an opportunity to be heard. Renaud v. Abbott, 116 US 277, 29 L Ed 629, 6 S Ct 1194.

Every person is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests, before he is affected by any judicial decision on the question. Earle v McVeigh, 91 US 503, 23 L Ed 398.

184.    Boddie v. Connecticut, 401 U.S. 371, 377-78 (1971) held:

"... due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard. Early in our jurisprudence, this Court voiced the doctrine that `(w)herever one is assailed in his person or his property, there he may defend,' Windsor v. McVeigh, 93 U.S. 274, 277, 23 L.Ed. 914 (1876). See Baldwin v. Hale, 1 Wall. 223, 17 L.Ed. 531 (1864); Hovey v.

58

Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897). The theme that `due process of law signifies a right to be heard in one's defense,' Hovey v. Elliott, supra, 417, 17 S.Ct. at 844, has continually recurred in the years since Baldwin, Windsor, and Hovey.3 Although `(m)any controversies have raged about the cryptic and abstract words of the Due Process Clause,' as Mr. Justice Jackson wrote for the Court in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), `there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.' Id., at 313, 70 S.Ct. at 656."

185.   **No Opportunity to Be Heard:**

A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights. Sabariego v Maverick, 124 US 261, 31 L Ed 430, 8 S Ct 461, and is not entitled to respect in any other tribunal. "A void judgment does not create any binding obligation. Federal decisions addressing void state court judgments include Kalb v. Feuerstein (1940) 308 US 433, 60 S Ct 343, 84 L ed 370; Ex parte Rowland (1882) 104 U.S. 604, 26 L.Ed. 861:

186.   "A judgment which is void upon its face, and which requires only an inspection of the judgment roll to demonstrate its wants of vitality is a dead limb upon the judicial tree, which should be lopped off, if the power to do so exists." People v. Greene, 71 Cal. 100 [16 Pac. 197, 5 Am. St. Rep. 448]. "If a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void." (1Freeman on Judgments, 120c.) An illegal order is forever void.

187.   A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights. _Sabariego v Maverick_, 124 US 261, 31 L Ed 430, 8 S

188.   Ct 461, _and, is not entitled to respect in any other tribunal._ ( e.g. a future preliminary hearing where more charges were filed against the Defendant.)

189.    "Even the most rudimentary of due process procedures gives the opportunity to be heard . . . to anyone directly affected by [an] official's action." ( *Lockyer v. City & County of San Francisco* (2004) 33 Cal.4th 1055, 1108.

190.    The limitations inherent in the requirements of due process and equal protection of the law extend to judicial as well as political branches of government, so that a judgment may not be rendered in violation of those constitutional limitations and guarantees. *Hanson v Denckla,* 357 US235,2LEd2d1283,78S.Ct1228.

## JUDGE RODRIGUEZ DENIED SARHAN A TRIAL AND REFUSED TO HEAR SARHAN AND WENT STRAIGHT TO JUDGMENT:

191.    "Defendants who have been treated with unfairness, bias and the appearance of prejudice by this Court and the opposing counsel, leaves open the question of how an uninterested, lay person, would question the partiality and neutrality of this Court."...**our system of law has always endeavored to prevent even the probability of unfairness.**" In re *Murchinson,* 349 U.S. 133,136(1955).

192.    This court had a duty to ensure fairness. This Court failed and refused to ensure that fairness. *Marshall v. Jerrico,* 100 S. Ct. 1610, 446 U.S. 238.

193.    "Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, **Fed. Rules Civ. Proc.**, Rule 60(b)(4), 28 U.S.C.A.; **U.S.C.A. Const. Amend. 5** - Klugh v. U.S., 620 F.Supp., 892 (D.S.C. 1985).    **Where Due Process is denied, the case is void** , Johnson v. Zerbst, 304 U.S. 458 S Ct.1019; Pure Oil Co. v. City of Northlake, 10 Ill. 2D 241, 245, 140 N.E. 2D 289 (1956) Hallberg v. Goldblatt Bros., 363 Ill. 25 (1936).

## III.   ARGUMENT

## THE MORTGAGE AND STIPULATION AGREEMENT ARE VOID BECAUSE THEY ARE A PRODUCT OF A PREDATORY LOAN WHICH VIOLATES FEDERAL AND STATE LAWS AND AGAINTS PUBLIC POLICY-THE MORTGAGE AND STIPULATION ARE VOID AB INITIO

## HOW THE LOAN VIOLATED FLORIDA FAIR LENDING ACT

194.    Florida Fair Lending Act ("FFLA") specifies that "a lender making a high-cost home loan shall not engage in any pattern or practice of extending high-cost home loans to borrowers based upon the borrowers' collateral without regard to the borrowers' ability to repay the loan, including the borrowers' current and expected incomes current obligations, and employment." 494.00791 (6), Fla. Stat. (2008).

195.    H&H admittedly conducted no financial due diligence and knew that Mr. Sarhan would never be able to repay this loan. H&H knew he had no job. He had no income. He had no assets. H&H did not even bother to conduct a cursory analysis of Sarhan's assets as it knew he had none. Despite this, H&H gave Sarhan a massive loan that it knew he could not repay. This clearly violates § 494.00791 (6) of FFLA, which provides that a lender shall not extend home loans to borrowers based upon borrower's collateral without regard to borrower's ability to repay the loan. including the borrower's current and expected income, current obligations and employment.

196.    The Sarhan loan included a provision of a pre-payment penalty for the first year. This violates 494.00791 (I)(a) which provides that a loan may not contain terns that require a borrower to pay a prepayment penalty for paying all or part of the loan principal before the date on which the payment is due.

197.    The loan provided for the payment of a balloon payment representing the entire principal of the loan of $350,000, due three years after the execution of the note and mortgage. This violates 494.00791(3), which states that a home loan having a term of less than 10 years may not

61

contain terms under which the aggregate amount of the regular periodic payments would not fully amortize the outstanding principal balance.

198.     The loan required Sarhan to immediately prepay an entire year of interest, totaling $36,750.00. This violates S 494.00791(5), which prohibits terms in a home loan under which more than two periodic payments required under the loan are consolidated and paid in advance from the loan proceeds provided to the borrower. This gave Sarhan the inaccurate assumption that he could repay the loan, when he could not.

199.     Interest under the loan increased from 10.5% to 18% upon a default. This violates 5 494.00791 (2) which provides that a home loan may not provide for a higher interest rate after default on the loan.

200.     The origination of the loan was offered by H&H to Sarhan's loan without a prearranged appointment on an emergency basis. Essentially, H&H demanded that Sarhan agree to this new loan with H&H so that H&H could alter its position as the first mortgage. This violates $494.00791 (12), which provides that a home loan may not be made as a direct result of a potential or future lender or its representative offering or selling a home loan at the residence of a potential borrower without a pre-arranged appointment with the potential borrower or the expressed invitation of the potential borrower.

201.     The loan included high points and fees amounting to six percent (6%) of the loan) which violates 494.0078(2)(a), and which places the loan as one that must abide by the restrictions of the Florida Fair Lending Act.

## SETTLEMENT AGREEMENT IS VOID BECAUSE IT IS AN ILLEGAL CONTRACT

202.     The Settlement Agreement void for the same reasons indicated above demonstrating that it is an illegal contract that violates Florida Statutes and hence cannot be enforced. **EXHIBIT D**

62

**THE SETTLEMENT AGREEMENT IS VOID BECAUSE THERE WAS NO MEETING OF THE MINDS IN THE CREATION OF THE SETTLEMENT AGREEMENT BECAUSE SARHAN & H & H BOTH NEVER INTENDED TO BAR SARHAN IN RAISING A PREDATORY LENDING DEFENSE SINCE THE SETTLEMENT AGREEMENT NEVER MENTIONS PREDATORY LENDING**

203.    On December 7, 2009, before the Stipulation for Settlement was signed, Rafael Halim, H&H's president, sent a letter to Sarhan that documented the terms of his settlement proposal. This letter is attached as **(Exhibit N).** He specifically confirmed the terms that were proposed in this letter. Nowhere in this proposal does he inform Sarhan that it is his understanding that the Settlement Agreement would have the of Sarhan waiving any of his defenses to a foreclosure. Why? Because it did not.

204.    Therefore, to the extent that any of the parties, and this Court, now believe that this was the intent of the agreement, it should be set aside or it is simply void. The agreement was never intended — by either party - to have this result.

205.    At the time that the settlement agreement was procured, it was procured through fraud and as a result, the agreement is void. Part of the fraud were the statements by Plaintiff and its counsel that the property was an investment property that was not the Defendant's residence when they all knew this not to be true.

206.    Contract law governs settlements. Zimmerman v. Olympus Fidelity Trust, LLC, 847 So. 2d 1101 (Fla. 4th DCA 2003). The court may refuse to enforce or may modify or set aside a settlement agreement obtained by fraud, mistake or by misrepresentation. Bare v. Bare, 120 So. 2d 186 (Fla. 3d DCA 1960); Beidler v. Beidler, 43 so. 2d 329 (Fla. 1949); Kern v. Kern, 291 so. 2d 210 (Fla. 4$^{ih}$ DCA 1974); Scales v. scales, 237 so. 2d 50 (Fla. 3d DCA 1970); Leffv. Ecker, 972 so. 2d 965 (Fla. 3d DCA 2007). The terms of a settlement proposal must be devoid of ambiguity, patent or latent.

and not require later clarification or interpretation. Dryden v. Pedemonti, 910 So. 2d 854 (Fla. 5th DCA 2005).

207.   Under Florida law, the unilateral mistake doctrine may be applied to a contract where (1 ) the mistake goes to the substance of the agreement, (2) the error does not result from an inexcusable lack of due care, and (3) the other party has not relied upon the mistake to his detriment. Roberts & Schaefer Co. v. Hardaway co., 152 F.3d 1283 (11th Cir. 1998).

208.   Where one party misunderstands or otherwise makes a unilateral mistake that goes to the substance of the agreement into which it enters, no meeting of the minds occurs, and, thus, no contract exists. Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283 (11th Cir. 1998). The equitable doctrine of unilateral mistake is appropriate for correcting a simple but honest mistake of an innocent party who so changed its position in reliance upon the mistake that it would be unconscionable to rescind the contract or would be impossible to restore the status quo. Roberts & Schaefer co. v. Hardaway co., 152 F.3d 1283 (11th Cir. 1998); Limehouse v. Smith, 797 so. 2d 15 (Fla. DCA 2001).

209.   A unilateral mistake may provide basis for rescission of a contract or other equitable relief. Maryland Cas. Co. v. Krasnek, 174 So. 2d 541 (Fla. 1965).

210.   Sarhan's understanding of the terms of the Agreement were not the result of his own negligence or lack of foresight, but the result of underhanded and dishonest practices by the Ralph Halim President of H & H. Indeed, Halim never expressed its position that the agreement barred Sarhan defenses for 8 years, and this despite that this action was litigated for 5 years and the night before the signing of this agreement, he never mentions anything about a Predatory Loan The Court should void the Stipulation for Settlement due to this mistake.

## IV.   ARGUMENT

## THE MORTGAGE AND STIPULATION ARE VOID DUE TO FRAUDULENT INDUCEMENT, UNDUE INFLUENCE, DURESS

## FRAUDULENT INDUCEMENT CLAIMS SHOULD ALWAYS BE IMMUNE FROM ECONOMIC LOSS RULE ATTACK

As an example of fraudulent inducement, imagine that a customer walks on to a used car lot to purchase a car. The salesman shows the customer a used vehicle and tells the customer that the vehicle has only 50,000 miles on the odometer. The customer buys the car. Later, the customer discovers that the vehicle actually had 100,000 miles, and the odometer has been altered. In such a case, the customer was fraudulently induced to enter into a contract to buy the car.

211. Thomas Sanders and Ralph Halim commits Fraudulent Inducement. Both prepared an illegal mortgage, an illegal Stipulation Agreement and an affidavit on its face is a product of Fraud. Sanders coerced Sarhan and Wife to sign an illegal mortgage and a fraudulent "Affidavit" "stating if you don't sign this affidavit, you don't get the loan and lose your house to foreclosure by Coconut Grove Bank." Sarhan and wife stated, you know we live on the property, we live across the Street from Ralph Halim, he said, "I don't know why Ralph wants you to sign it but if you want the loan you're going to have to sign this or lose your home, just sign it, it is no big deal. Sanders put Sarhan mother's home address on the affidavit, Ralph Halim told him to do so, because if this was our homestead property which it was, this would be a predatory Loan, if it was not our homestead property, it would not be a Predatory Loan. As an attorney, he knew the affidavit was fraudulent.

212. Fraudulent inducement is a type of legal claim often raised when a person has been tricked or defrauded into entering into a contract or transaction. To establish a claim of fraudulent inducement, a victim must generally prove the following:

A. First, the fraudster made a misrepresentation of fact that was material to the transaction.
B. Second, the fraudster knew that the misrepresentation was false.

C. Third, the fraudster made the misrepresentation to persuade the victim to agree to the transaction or contract.

D. The victim relied on the misrepresentation, Samuels v. King Motor Company of Fort Lauderdale, 782 So. 2d 489, 497 (Fla. 4th DCA 2001), See also Hilcrest Pacific Corporation v. Yamamura, 727 So. 2d 1053, 1055 (Fla. 4th DCA 1999); Lou Bachrodt Chevrolet, Inc. v. Savage, 570 So. 2d 306, 308(Fla. 4th DCA 1990), rev. denied, 581 So. 2d 165 (Fla. 1991); Spitz v. Prudential-Bache Securities, Inc., 549 So. 2d 777,778 (Fla. (Fla. 4th DCA 1989); Alexander/Davis Properties, Inc. v. Graham, 397 So. 2d 699, 706 (Fla. 4th DCA 1981), petition for rev. denied, 408 So. 2d 1093 (Fla. 1981). Simon v. Celebration Co. 883 So. 2d 826, 832 (Fla. 5th DCA 2004), See also Taylor Woodrow Homes Florida, Inc. v. 4/46-A-Corp., 850 So. 2d 536, 542 (Fla. 5th DCA 2003), rev. denied, 860 So. 2d 977 Fla. 2003); Palumbo v. Moore, 777 So.2d 1177, 1179 (Fla. 5th DCA 2001).

E. Fifth, the victim would not have agreed to the contract or transaction if he or she had known the truth.

213. Fraudulent inducement is a separate and distinct claim from breach of contract, because to have a breach of contract, there must first be an actual contract. Under a claim for fraudulent inducement the plaintiff alleges that the defendant made a *pre-contract* false representation that caused the plaintiff to enter the contract. In this situation, the contract is a fraud such that no claims may be made under it. When a contract was entered into based on fraud, it is void such that there is no actual contract. That is why cancellation (or rescission) is the main remedy for a claim of Fraud in the Inducement.

214. Gastesi has used this affidavit to get a judgment against Sarhan and his Wife by stating they do not live on the subject property when he knows we do live on the property which is Fraud on the Court. Gastesi also committed Fraud on the Court in the Third District Court of Appeals stating that the money was used to fix the sprinkler system, trees and a drip system which is also a product of Fraud on the Court. Sarhan provided this court with certified court documents that this money was used to finish the house and Halim a general Contractor drew the floor plans to the home. This case has been going on for 11 years now and the first time anyone mentioned about this not being Sarhan and Family Homestead Property was by Gastesi, on July

31, 2017, prior to this no one ever denied this was not Sarhan's home. Testimony by Fernando Bernal, neighbors with Sarhan for 25 years testified I lived here and Earnest Faust Jr. testified that I have lived here as well, Earnest also lived in Sarhan's home for 3 years.

## FS 416.27 AFFIRMATIVE DEFENSE – UNDUE INFLUENCE

215.    Sarhan claims that he should be able to set aside the contract because Halim and unfairly pressured him into agreeing to the contract.  To establish this defense, Sarhan must prove both of the following:

> 1.    Halim used a relationship of trust and confidence [or] [(defendant)'s weakness of mind] [or] [(defendant)'s needs or distress] to control, persuade, or pressure (defendant) into agreeing to the contract; Halim came to Sarhan's home daily, sometimes three times per day, to see what Sarhan was doing in building his home. Halim visited Sarhan's home thousands of times to the Sarhan home and thousands of phone calls from 1998 to 2008, so if Halim wanted Sarhan to sign something, Sarhan trusted Halim.
>
> 2.    Sarhan would not otherwise have voluntarily agreed to the contract.

## FS 416.27 SOURCES AND AUTHORITIES

1.  "Undue influence must amount to over-persuasion, duress, force, coercion, or artful or fraudulent contrivances to such a degree that there is a destruction of free agency and willpower." *Jordan v. Noll*, 423 So.2d 368, 370 (Fla. 1st DCA 1982).

2.  "[M]ere weakness of mind, unaccompanied by any other inequitable incident, if the person has sufficient intelligence to understand the nature of the transaction and is left to act upon his own free will, is not a sufficient ground to set aside an agreement." *Donnelly v. Mann*, 68 So.2d 584, 586 (Fla. 1953) (citations omitted).

3.  "To constitute 'undue influence' the mind ... must be so controlled or affected by persuasion or pressure, artful or fraudulent contrivances, or by the insidious influences of persons in close confidential relations with him, that he is not left to act intelligently, understandingly, and voluntarily, but ... subject to the will or purposes of another." *Peacock v. Du Bois*, 105 So. 321, 322 (Fla. 1925) (citation omitted).

## V.    ARGUMENT

## SANDERS AND HALIM'S COERCION/DURESS

216. Coercion, also known as **duress**, is where one party uses force or pressure to get another party's consent to a **contract**. The force does not have to be physical -- one could be put under mental **duress**. ... **Statute** of Frauds: **Contracts**, in many instances, do not have to be in writing to be legally enforceable, when you're a person possibly going to lose his home, with a recent career loss, mental duress is proper.

217. Duress is that degree of constraint or danger either actually inflicted or threatened and impending, sufficient to overcome the mind and will of a person of ordinary firmness. Pac. Mut. Life Ins. Co. v. McCaskill, 126 Fla. 82, 170 So. 579, 583 (1936); City of Miami v. Kory, 394 So.2d 494 (Fla. 3d DCA 1981). To constitute the coercion or duress sufficient to make a payment involuntary, there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, for which the latter has no means of immediate relief other than making the payment. Pac. Mut., 170 So. at 583(emphasis added); see also Spillers v. Five Points Guaranty Bank, 335 So.2d 851, 853 (Fla. 1st DCA 1976). The concept of duress is well-grounded in the law, and we see no reason why duress cannot lie on the instant facts.

218. In jurisprudence, **duress** or **coercion** refers to a situation whereby a person performs an act as a result of violence, threat, or other pressure against the person. Black's Law Dictionary (6th ed.) defines duress as "any unlawful threat or coercion used... to induce another to act [or not act] in a manner [they] otherwise would not [or would]". Duress is pressure exerted upon a person to coerce that person to perform an act they ordinarily would not perform. The notion of duress must be distinguished both from undue influence in the civil law. In criminal law, duress and necessity are different defenses.

219. Duress in the context of contract law is a <u>common law</u> defense brought about when one of the parties to the contract enjoyed an ascendant position in relation to the other party and abused that position by subjecting the other to *threats*. A party who has entered into a contract under duress is entitled to rescind or set aside the contract, rendering it voidable (in equity).

220. Duress is a threat of harm made to compel someone to do something against their will or judgment; especially a wrongful threat made by one person to compel a manifestation of seeming assent by another person to a transaction without real volition. - Black's Law Dictionary (8th ed. 2004).

### THE ELEMENTS OF ECONOMIC DURESS

221. Economic duress is the use of unlawful economic pressure to compel a party to a contract to agree to demands which they would not have otherwise.

1. **Wrongful or improper threat**: No precise definition of what is wrongful or improper. Examples include: morally wrong, criminal, or tortious conduct; one that is a threat to breach a contract "in bad faith" or threaten to withhold an admitted debt "in bad faith".
2. **No reasonable alternative (but to accept the other party's terms)**. If there is an available legal remedy, an available market substitute (in the form of funds, goods, or services), or any other sources of funds this element is not met.
3. **The threat actually induces the making of the contract**. This is a subjective standard, and takes into account the victim's age, their background (especially their education), relationship of the parties, and the ability to receive advice.
4. **The other party caused the financial distress**. The majority opinion is that the other party must have caused the distress, while the minority opinion allows them to merely take advantage of the distress. See *Universe Tankships Inc of Monrovia v International Transport Workers Federation (The Universe Sentinel)* [1981] UKHL 9.

### VI.   ARGUMENT

### UNCLEAND HANDS DOCTRINE
### SINCE THE LENDER HAS UNCLEAN HANDS HE IS NOT ENTITLED TO RELIEF

69

222.   It is certainly beyond question that Halim has Unclean Hands where "one who comes into equity must come with clean hands else all relief will be denied him regardless of the merits of his claim. It is not essential that the act be a crime; it is enough that it be condemned by honest and reasonable men." *Ocean View Towers, Inc. v. First Fid. Sav. & Loan Ass'n*, 521 So. 2d 325,326 (Fla. 4th DCA 1988) (quoting Roberts v. Roberts, 84 So. 2d 717, 720 (Fla. 1956)). Recently, this court found that unclean hands is tantamount to "[u]nscrupulous practices, overreaching, concealment, trickery or other unconscientious conduct." *Congress Park Office Condos II*, No. 4D11-4479 at 6-7 (citation omitted). Under the Unclean Hands Doctrine which if sufficiently pled, was asserted as an affirmative defense to this mortgage foreclosure action. See, e.g., *Quality Roof Servs., Inc. v. Intervest Nat'l Bank*, 21 So. 3d 883, 885 (Fla. 4th DCA 2009); cf. *Congress Park Office Condos II, LLC v. First-Citizens Bank & Trust Co.*, No. 4D11-4479 (Fla. 4th DCA Jan. 16, 2013).

223.   Under the unique facts of this Case and the record before us, the Homeowner's (the Sarhan's) allegations were legally sufficient to properly assert the defense of Unclean Hands. See *Monetary Funding Grp. Inc. v. Pluchino*, 867 A.2d 841 (Conn. App. Ct. 2005) (finding that where the borrower was unsophisticated and the lender misled the borrower about the terms of the loan and failed to conduct a bona fide evaluation of the borrower's ability to repay the loan, the trial court should have concluded that the borrower's Unclean Hands Defense precluded Foreclosure). H & H Investors, Ralph Halim, was a friend and the Plaintiff's neighbor, the Plaintiff "trusted" the Lender because they were friends and stated "I have a lot of money and doing nothing with it, I will help you" however, he only wanted to help himself to Plaintiff's property and the Unclean Hands Doctrine Applies. However, Judge Rodriguez Never gave the Plaintiff an opportunity to argue this Case in Court, violating all the due process rights of the

70

Plaintiff, immediately giving a Judgment to the Lender , which was a product of Fraud on the Court and the Judgment should be Void.

## VII.   ARGUMENT

### FRAUD ON THE COURT/CONSPRIACY AND RACKETEERING (RICO) BETWEEN GASTESI, HALIM, PEARCE/RODRIGUEZ JUDGE JOSE M. RODRIGUEZ DOING A FAVOR OR BRIBERY BY RAUL GASTESI WITH CRIMINAL ACTIONSUNDER THE COLOR OF LAW THROUGH USE OF A SIMILATED LEGAL PROCESS FLORIDA STATUTE 843.0855

224.    A successful RICO plaintiff must establish that the defendants engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962(c); *see also In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 484 (6th Cir. 2013). Sarhan has identified a pattern of racketeering activity because he has alleged a plausible scheme or artifice to defraud. As well as Obstruction of Justice

225.    **To establish a pattern of racketeering activity, the plaintiff must allege at least two related acts of racketeering activity that amount to or pose a threat of continued criminal activity.** *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir. 2008). The RICO statute enumerates dozens of crimes that constitute racketeering activity. *See* 18 U.S.C. § 1961(1). Among these crimes are mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343--the two predicate crimes that Sarhan alleged in his proposed complaint. Mail and wire fraud consist of (1) a scheme or artifice to defraud; (2) use of the mails or interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property. *United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006); *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003). "A scheme to defraud is any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *United States v. Faulkenberry*, 614 F.3d 573, 581 (6th Cir. 2010) (internal quotation marks and alterations omitted). Other crimes are 18 USC § 1503 obstruction of justice

71

by Judge Rodriguez and Judge Smith *United States v. Saget*, 991 F.2d 702, 713 (11th Cir.), *cert. denied*, 510 U.S. 950 (1993); *United States v. Neal*, 951 F.2d 630, 632 (5th Cir. 1992); *United States v. Rasheed*, 663 F.2d 843, 850-52 (9th Cir. 1981), *cert. denied, sub. nom. Phillips v. United States*, 454 U.S. 1157 (1982) and other charges will be added in the future.

226.    On October 13, 2017, Judge Jose Rodriguez granted the Plaintiff's attorney Michael Cotzen the right to withdrawal and Judge Rodriguez stated to the Defendant (Sarhan), **"You Have 20 Days to Find Counsel."**

227.    Immediately, standing to my left, Raul Gastesi, started jumping up and down, waving his hands and screaming out like he was at a baseball game in a low pitch voice, **"Judge" "Judge" "NOOOOOOOOOOOOOO," Not Twenty Days,** and then Judge Rodriguez looked directly at Raul Gestasi, made eye contact, like they already **PREVIOUSLY PLANNED SOMETHING TOGETHER** to destroy the Defendants rights, without giving him time to find new counsel, to put him at a grave disadvantage for the October 20, 2017 Motion for Rehearing. Judge Rodriguez then stated, **"I Am Not Giving You Twenty Days, You Have 6 Days To Find Counsel,"** which including the next day which is Saturday, so in reality, the Defendant only has "6 days" to find counsel.

228.    **Judge Rodriguez crossed out the 20 days and wrote in 6 days** till the October 20 hearing, prejudicing the Defendant in finding new counsel, which would be impossible. See **(Exhibit L)**

### RAUL GASTESI FRAUD ON THE COURT AND COLLUSION WITH MS. PEARCE

227.    This collusion Bias and Prejudicial goes further. It is clear that Gestasi and Judge Rodriguez had already a pre-arranged plan and were working together to steal the Sarhan's property. Sarhan was denied a Trial and whatever tool [lace in the Courtroom was a Simulated

Court proceedings because Rodriguez, Gastesi and Halim already made a deal behind closed doors, prior to the July 31, 2017 judgment, granting a judgment on a Motion in Limini without a Summary Judgement, which is illegal. See Otero v. Gomez 143 So. 3d 1089 (Fla. 3d DCA 2014).

204. However about a month later, on October 13, 2017, Patreeze Pearce, Court Stenographer from Brickell, Gomberg & Associates **intentionally altered** the Court transcripts to protect Raul Gastesi, Jr and Judge Rodriguez for their Collusion and Fraud which was perpetrated in the Court. Plaintiff just recently seen the Court transcripts and the transcripts were not prepared prior to the Motion to Disqualify Judge Rodriguez. Plaintiff swear under the penalties of perjury that Gastesi had Patreeze Pearce alter these transcripts. **(Exhibit M), Court Transcripts Altered On Page 8,**

Judge Rodriguez stated, "Anyway, I'm done with you.

Judge Rodriguez stated, "You have 20 days to get a new lawyer"

228. Then Raul Gestasi was actually waiving his hands at the Judge and yelling out, **NOOOOOOOOO, NOOOOOOOO Judge Judge not 20 days,** Judge Rodriguez looked Gestasi right in the eyes and then stated, **"You got 6 days to find a new lawyer."** If you look at the Court transcripts, it says, ["You do not get 20 days to get a new lawyer." You've got six days to get a new lawyer and I will go with the hearing on the 20th." "Have a good day"]. The Judge did not say this. **This is Fraud. Florida Rules of Criminal Procedure Rule 839.13 Patreeze Pearce Falsifying Records.**

229. Clearly Raul Gastesi had Patreeze Pearce alter the Court Transcripts, to cover up this Agreement he had with Judge Rodriguez. This cover up in altering the Court transcripts by Ms. Pearce and Raul Gastesi is tantamount to the Corruption in this Court by Gastesi and Rodriguez.

230. Gastesi's and Judge Rodriguez Fraud on the Court prevented the Appellant from fairly presenting his case or defense and violated the Appellants Procedural Due Process Rights. *Chemtall Inc. v. Citi-Chem. Inc.*, 992 F. Supp. 1390, 1409 (S.D. Ga. 1998)(quoting *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1048 (8th Cir.1991). As in *Chemtall*, the Appellant has spent substantial resources in attempt to get a Court to reverse the Manifest Injustice that the Appellant and his Family have suffered over the last 11 years and in foreclosure. Judge Rodriguez does not have authority to make an illegal loan legal, therefore he exceeded his jurisdiction in this case and the judgement is void and Rodriguez could not enter an order outside the scope of the pleadings, which he did violation Sarhan's Constitutional Rights.

231. "A court must vacate any judgment entered in **excess of its jurisdiction**." (Lubben v. Selective Service System Local Bd. No. 27, 453 F.2d 645 (1st Cir. 1972).). Judge Bjork did not follow prescribed procedure and exceeded his jurisdiction to issue an excessive bail on the Defendant, on an unproven misdemeanor. Nor did he have the jurisdiction to incarcerate the Defendant, on a void order and, without due process to be heard; she was not even informed in this court of her "crime." The U.S. Supreme Court, in Scheuer v. Rhodes, supra, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) "A court must vacate any judgment entered in excess of its jurisdiction." (Lubben v. Selective Service System Local Bd. No. 27, supra, 453 F.2d 645 (1st Cir. 1972).).

232. " A judgment is void on its face if the trial court exceeded its jurisdiction by granting relief that it had no power to grant. Jurisdiction cannot be conferred on a trial court by the consent of the parties." (Summers v. Superior Court (1959), supra, ; Roberts v. Roberts (1966) supra, ) Thus, the fact that a judgment is entered pursuant to stipulation does not insulate the

74

judgment from attack on the ground that it is void. In People v. One 1941 Chrysler Sedan (1947) 81 Cal. App. 2d 18, 21-22 [183 P.2d 368]

## VIII.   ARGUMENT

### GASTESI, SANDERS AND HALIMS FRAUD ON THE COURT AND FRAUDULENT INDUCEMENT

233.    Federal Rule of Civil Procedure 60(b) allows a court, upon motion of a party, to relieve a party from a final judgment for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." In addition, Rule 60(b) states that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding . . . or to set aside a judgment for fraud upon the court." In Beggerly, the United States Supreme Court noted that there 3 must be a difference between the type of fraud that could be the basis for a Rule 60(b)(3) motion for relief from judgment and the type of fraud necessary to maintain an independent Rule 60(b) action. Otherwise, the one-year time limit on Rule 60(b)(3) motions "would be set at naught." Beggerly, 524 U.S. at 46, 118 S. Ct. at 1867. Thus, "[i]ndependent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand departure' from rigid adherence to the doctrine of res judicata." Id. (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244, 64 S. Ct. 997, 1000, 88 L.Ed. 1250 (1944)). Therefore, the Court stated, "an independent action should be available only to prevent a grave miscarriage of justice." Id. at 47, 118 S. Ct. at 1868.

211.    The Court of Appeals for the Eleventh Circuit has defined "fraud upon the court" as "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual

75

manner its impartial task of adjudging cases that are presented for adjudication." Travelers Indem. Co. v. Gore, 761 F.2d 1549, 1551 (11th Cir. 1985).

> Generally speaking, only the most egregious conduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court. Less egregious conduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court. . . . These parameters are strictly applied because a finding of fraud on the court permits the severe consequence of allowing a party to overturn the finality of a judgment.

234. Zurich N. Am. v. Matrix Svc., Inc., Nos. 04-5101, 05-5027, 2005 WL 2651382 (10th Cir. Oct. 18, 2005). "The presumption against the reopening of a case that has gone through the appellate process all the way to the United States Supreme Court and reached final judgment must be not just a high hurdle to climb but a steep cliff-face to scale." Herring v. United States, 424 F.3d 384, 386 (3d Cir. 2005).

235. Sarhan claims that Gastesi made a deal with Rodriguez, seeing the Rodriguez Robing Room reports would support Sarhan's claim. However, the ruling of Rodriguez, granting a judgment on a Motion in Limini, denying Sarhan the right to be heard in the state court, however, more importantly, Judge Rodriguez protected Halim from being put on the stand under oath, so Sarhan's attorney could not ask him about the Affidavit Sarhan was forced to sign, about the loan which was a Predatory loan, and the interest on top of interest and the Stalking of Sarhan and Sarhan's child.

236. Sarhan claim is that Halim and Sanders fraudulently induced and coerced Sarhan and Wife to sign this affidavit stating we do not live on the subject property, this signifies Pre-Meditation to steal the Sarhan Property, which is right across the street from Halim, the Lender. Sanders already had the affidavit prepared with Sarhan's mother's home address on the affidavit, prior to us walking in the door.

237. However, Halim served certified letters and the Complaint to the Sarhan home as well as Gastesi and Sanders. All correspondents to our home where Sarhan has lived for 25 years.

238. Sarhan and his wife did sign the affidavit under duress. They were scared of losing their home and their life savings due to foreclosure. Sarhan and Wife sign the affidavit because we trusted Ralph and thought it was because we did not have the Certificate of Occupancy on the home. Sanders said, "if you do not sign this you lose your home to foreclosure," but we live on the property, we live right across the street from Ralph Halim. Sander said, "I don't know why he wants you to sign it but if you want the loan you're going to have to sign it," when we questioned him, he said just sign it.

239. In 2012 Raul Gastesi started representing Halim and for the next 5 years, no one ever mentioned the affidavit, then 64 minutes before the trial, Gastesi files a Motion in Limini stating to exclude any wrong doing by the Lender and about this loan which is a Predatory loan against Federal and State Law. Each time Gastesi speaks in Court states this is not Sarhan and family's home, this is strictly for agricultural use which is a product of Fraud on the Court.

240. Gastesi has orchestrated this whole Racketeering Enterprise along with Halim, Rodriguez and Sanders, who received a judgment due to this Fraud that both he has perpetrated on the lower court and on the Appeal court. Gastesi has taken an Affidavit that he knows is a product of fraudulent inducement, duress, coercion and has used this document even though Gastesi knows it is a fraud. Since Halim lives directly across the street and visited the Sarhan home for 10 years knowing Sarhan and family live at the subject property, Gastesi fraud is in violation of:

Federal Rule of Civil Procedure 60(b) allows a court, upon motion of a party, to relieve a party from a final judgment for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." In addition, Rule 60(b) states that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding . . . or to set aside a judgment for fraud upon the court." In Beggerly, the United States Supreme

Court noted that there 3 must be a difference between the type of fraud that could be the basis for a Rule 60(b)(3) motion for relief from judgment and the type of fraud necessary to maintain an independent Rule 60(b) action. Otherwise, the one-year time limit on Rule 60(b)(3) motions "would be set at naught." Beggerly, 524 U.S. at 46, 118 S. Ct. at 1867. Thus, "[i]ndependent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand departure' from rigid adherence to the doctrine of res judicata." Id. (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244, 64 S. Ct. 997, 1000, 88 L.Ed. 1250 (1944)). Therefore, the Court stated, "an independent action should be available only to prevent a grave miscarriage of justice." Id. at 47, 118 S. Ct. at 1868.

241. According to Judge Ryskamp, the Appellants entire case is **Fraudulent.** Judge Ryskamp was faced with a similar case: the crux of the case was fraud. see *Vargas v. Peltz*, 901 F. Supp. 1572 (S.D.Fla.1995). In *Vargas*, the plaintiff brought a sexual harassment suit based upon an incident in which the plaintiff alleged that her superior gave her a woman's undergarment and told her to wear if for him. The Vargas plaintiff testified to the incident at deposition and produced the undergarment. Id. at 1574. Upon investigation, the defendant learned that the undergarment produced had not been manufactured until a year later after the alleged incident. Id. at 1574-1575. Judge Ryskamp held that the complaint should be dismissed because the plaintiff:

has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially to adjudicate a matter by improperly influencing the Trier or unfairly hampering the presentation of the opposing party's claim or defense.

*Vargas*, 901 F. Supp. at 1579. "Fraud on the Court has been found only in those instances where the fraud vitiates the Court's ability to reach an impartial disposition of the case before it. See *Harbold*, 51 F.3d at 622." *Davenport Recycling Associates v. C.I.R.*, 220 F.3d 1255, 1262 (11th Circuit 2000). This is precisely our allegations here.

242. The Supreme Court has described Fraud on the Court as a wrong against the Institutions set up to protect and safeguard the public. *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322

U.S. 238, 246 (1944): "Fraud on the Court is used to describe a variety of improper acts that may lead to sanctions under the rules of civil procedure or pursuant to a Court's inherent power in managing its docket. *E. G. Stanley Shenker & Assocs. v. World Wresting Fed'n Entm't*, 48 Conn.Supp.357 (Conn.Ct.2003)."

243.    Sarhan is entitled to Relief, under the **Manifest Injustice Doctrine** and for Fraud on the Court under Rule 60(d) which is a narrow doctrine and constitutes "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Travelers Indem. Co.*, 761 F.2d at 1551. Rule 60(d) "preserves a court's historical equity power to entertain an independent action to relieve a party from a judgment, order, or proceeding," but is "reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1359 (11th Cir. 2014) (emphasis added) (quoting United States v. Beggerly, 524 U.S. 38, 46, 118 S.Ct. 1862, 1867, 141 L.Ed.2d 32 (1998)) (quotations omitted). Appellant files this Rule 60(d), as adopted by the Eleventh Circuit, the elements of a Rule 60(d) independent action are as follows:

    (1)  a judgment which ought not, in equity and good conscience, to be enforced;
    (2)  a good defense to the alleged cause of action on which the judgment is founded;
    (3)  fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense;
    (4)  the absence of fault or negligence on the part of defendant;
    (5)  the absence of any adequate remedy at law. Bankers Mortg. Co. v. United States, 423 F.2d 73, 79 (5th Cir. 1970); Day v. Benton, 346 F. 3 App'x at 478.

## IX.   ARGUMENT

**JUDGE RODNEY SMITH SUPPORTS JUDGE RODRIGUEZ IN THIS PREDATORY/ILLEGAL LOAN, FRAUD ON THE COURT, DUE PROCESS VIOLATIONS, VOID JUDGMENT, AND PUTS SARHAN'S HOME FOR SALE,**

**COMMITTING TREASON AGAINST THE UNITED STATES CONSTITUTION IN VIOLATION OF SECTION 1983 OF THE 1871 CIVIL RIGHTS ACT AND OBSTRUCTION OF JUSTICE AND CRIMINAL ACTIONS UNDER THE COLOR OF LAW THROUGH THE USE OF A SIMULATED LEGAL PROCESS**

244.    After Judge Rodriguez disqualified himself, Judge Rodney Smith received this case. Since Judge Rodriguez Judgment was VOID, for violating Sarhan's due process rights by not allowing him to be heard in the state court, not allowing him to cross examine the Lender, denied Sarhan an evidentiary hearing, and for Gastesi's Fraud on the Court stating this is not Sarhan's Homestead Property.

245.    Judge Smith refused to listen, Judge Smith would not allow Sarhan to speak, Judge Smith gave Gastesi a sale date without understanding why the Judgment was VOID. He has committed treason against our constitution as Judge Rodriguez. Rodriguez and Smith both denied Sarhan his day in Court and a right to be heard, therefore the Judgement is VOID AB INITIO. Smith should be charged with Obstruction of Justice, where he is enabling this Mortgage Fraud crime to be completed.

246.    Judge Rodriguez and Judge Smith deprived Sarhan a right to speak and defend himself. Judge Rodriguez and Judge Smith deprived Sarhan his federally protected rights such as the "Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment." Rodriguez and Smith has engaged in Mortgage Fraud, Racketeering, Color of Law Violations, White Collar Crimes, Civil Rights Violations, Obstruction of Justice and denying Sarhan is 14th Amendment Rights of Life Liberty and Property without due process where Rodriguez and Smith denied Sarhan the Equal Protection of the laws and why Sarhan files this claim under 42 USC §1983 against these two Judges that set out to destroy Sarhan's life. We also believe for Rodriguez to go to such a degree he did in violating Sarhan's due process rights along with his ex-parte communication with Gastesi, Rodriguez was bribed to engage in this judicial behavior.

247.    42 USC §1983 is one of the most powerful authorities with which state and federal courts may protect those whose rights are deprived, Section 1983 of the 1871 Civil Rights Act provides a way individuals can sue to redress when their federally protected rights are violated, like the First Amendment rights and the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. Section 1983 can be used to redress violated rights based on the federal Constitution and federal statutes, such as the prohibition of public sector employment discrimination based on race, color, national origin, sex, and religion.

248.    Section 1983 made relief—in the form of money damages—available to those whose constitutional rights *had been violated* by a person acting under State authority. Normally, constitutional rights violations are remedied by specific performance including injunctions by the courts. Thus, if a person's right to due process was violated by a prison guard who was said to be acting under the authority of the state, under § 1983, that person could bring suit for monetary damages against the prison guard. Without § 1983, that person would have to seek an injunction by the courts for the due process violation. The problem with such an action by the court is that injunctions, which instruct a party on penalty of contempt to do or not do some action, cannot apply to past harm, only future harm. So, essentially the person would have an actionable cause—the constitutional violation—with no adequate remedy. Most § 1983 claims are brought against prison officials by prisoners, but prisoner claims are usually dismissed as being without merit. Claims can be brought by anyone stating a proper cause of action.

196.    Today, the 1871 Civil Rights Act can be invoked whenever a state actor violates a federally guaranteed right. The most common use today is to redress violations of the Fourth Amendment's protection against unreasonable search and seizure. Such lawsuits concern false arrest and police brutality, most notably in the Rodney King case. The rise of the Black Lives

Matter movement along with smart phone video cameras have made Section 1983 lawsuits easier to obtain because of technological advances, including bodycams worn by law enforcement.

**Extortion under color of law**

249.    If Rodriguez was paid money to rule in Halim's favor and violate all of Sarhan's due process rights, then Rodriguez should be charged under the Hobb's Act. The Hobbs Act also reaches extortionate acts by public officials acting under the color of law. A public official commits extortion under the color of law when he obtains a payment to which he is not entitled knowing that it was made in exchange for official acts. § 1951 therefore not only embraces the same conduct the federal bribery statute (18 U.S.C. § 201) prohibits, it goes further in two ways:

1. § 1951 is not limited to federal public officials.
2. The government need only prove a public official agreed to take some official action in exchange for payment as opportunities arose to do so (i.e. a "stream of benefits" theory) to sustain a § 1951 charge whereas, under § 201, the government must prove an express *quid pro quo* (or something approaching one).

250.    The FFCA is modeled after the federal False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"), and functions in much the same way. The FFCA authorizes both Florida's government and private individuals (acting on the government's behalf) to bring civil actions for damages against persons engaging in prohibited conduct. Specifically, and among other things, the FFCA creates civil liability for a person who: "(a) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval; (b) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim; (c) Conspires to commit a violation of [Fla. Stat. § 68.082(2)]; … and (g) Knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the state, or knowingly conceals or knowingly and improperly avoids or decreases an obligation

82

to pay or transmit money or property to the state." The FFCA often arises in the context of the health care industry.

## SUPREME COURT'S EMPHASIS ON DUE PROCESS

251. In a long line of cases, the United States Supreme Court has held that impingements of constitutional rights are, without variation, subject to the strictures of "due process" or notice and opportunity to be heard prior to their enactments. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950); Anti-Fascist Committee v. McGrath, 341 U.S. 123 (1951); Goldberg v. Kelly, 397 U.S. 254 (1970), Fuentes v. Shevin, 407 U.S. 67 (1972); Owen v. City Of Independence, 445 U.S. 622 (1980); Carey v. Piphus, 435 U.S. 247, 259 (1978); Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

## X. JUDGES RODRIGUEZ & JUDGE SMITH DENIES SARHAN RIGHTS OF ACCESS TO COURTS IS CONSTITUTIONALLY PROTECTED

200. Sarhan was denied access to the Courts: The right of access to the Courts is clear according to the U.S. Supreme Court. Bounds v. Smith, 430 U.S. 817 (1977);M.L.B. v. S.L.J., 519 U.S. 102 (1996). The Supreme court has stated the right of access to the courts also protected by the First Amendment. BE&K Construction CO. v. National Labor Relations Board et al. 536 U.S. 516 (2001)("the right to petition extends to all departments of the Government," and that "[t]he right of access to the courts is … but one aspect of the right of petition.").California Motor Transp. Co. v. Trucking Unlimited, 404 U. S. 508, 510 (1972)("The right of access to the courts is indeed but one aspect of the right of petition."). See Tennessee v.

Lane, 541 U.S. 509 (2004)(recognizing "the fundamental right of access to the courts"); Procunier v. Martinez, 416 U.S. 396 (1974)("The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.").

201. Moreover, the doctrine of equitable relief was created to remedy the injustice that results from fraud on the court. A court is mandated and has the duty to overturn an order and a judgment that is the product of fraud on the court. See Hazel-Atlas, 322 U.S. at 250-51

202. Just as in Hazel Glass v. Hartford, a fraudster attorney concocted a scheme to defraud has been deviously orchestrated, Gastesi has concocted the same scheme and this scheme produced an illegal and void judgment that should be overturned by this court.

203. The state court has made a mockery of this proceeding, causing a Manifest Injustice and Irreparable Harm by failing to address the issue of Fraud on the Court and Void Judgment, instead pretending, it does not exist, thereby perpetrating a simulated Color of Law Proceedings wherein it is perpetrating the wrong doing and abetting unlawful acts and depriving Sarhan of his Constitutional Rights of Due Process in a Sham Proceedings.

204. A district court's dismissal for fraud upon the court pursuant to its inherent authority is reviewed for abuse of discretion. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50, 111 S.Ct. 2123, 2136, 115 L.Ed. 2d 27 (1991); *see also Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir. 1998). A district court has "considerable latitude in dealing with serious abuses of the judicial process." *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1117 (1st Cir. 1989).

205. Actions for fraud upon the court are not so rare anymore and that this Court has a duty to protect Stone from the fraud which is perpetrated against her. The concept of fraud upon the

court challenges the very principle upon which our judicial system is based: the finality of a judgment. The presumption against the reopening of a case that has gone through the appellate process all the way to the United States Supreme Court and reached final judgment must be not just a high hurdle to climb but a steep cliff-face to scale.

**GASTESI'S FRAUD ON THE COURT**

206.   The United States Court of Appeals for the Sixth Circuit has set forth five elements of fraud upon the court which consist of conduct: "1. On the part of an officer of the court; 2. That is directed to the 'judicial machinery' itself; 3. That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4. That is a positive averment or is concealment when one is under a duty to disclose; 5. That deceives the court." Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir. 1993).

207.   1. Where Gastesi is an Officer of the Court, 2. Gastesi has directed this fraud at the judicial machinery itself, with judicial participation, 3. Gastesi has intentionally made false statements with a fraudulent affidavit, 4. That Gastesi refused to disclose the truth even though he is aware of the falsities in his statements and legal briefs, 5. Gastesi has deceived the Courts with the fraudulent affidavit to be granted a judgment which was procured through fraud and Gastesi had engaged in bribery of a judge Rodriguez and had ex parte communication with Magistrate Judge Alicia Otazo Reyes and engaged in judicial corruption.

208.   Although other United States Courts of Appeals have not articulated express elements of fraud upon the court as the Sixth Circuit did, the doctrine has been characterized "as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense." In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.2d 180, 195 (8th Cir. 1976) (citations

85

omitted); see also Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978) (holding "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court"). Additionally, fraud upon the court differs from fraud on an adverse party in that it "is limited to fraud which seriously affects the integrity of the normal process of adjudication." Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1998).

209. Other United States Courts of Appeals expressly require that fraud upon the court must involve an officer of the court. See Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 48 4 is directed at the court itself; and in fact deceives the court. (1st Cir. 1995); Demjanjuk, 10 F.3d at 348.

210. The Ninth Circuit noted that "one species of fraud upon the court occurs when an 'officer of the court' perpetrates fraud affecting the ability of the court or jury to impartially judge a case." Pumphrey v. Thompson Tool Co., 62 F.3d 1128, 1130 (9th Cir. 1995); see also Weese v. Schukman, 98 F.3d 542, 553 (10th Cir. 1996) (noting that "fraud on the court should embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court") (citation omitted); Kerwit Med. Prods., Inc. v. N. & H. Instruments, Inc., 616 F.2d 833, 837 (11th Cir. 1980) (same). 5 We further conclude that a determination of fraud on the court may be justified only by "the most egregious misconduct directed to the court itself," and that it "must be supported by clear, unequivocal and convincing evidence." In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.2d 180, 195 (8th Cir. 1976) (citations omitted). The claim of privilege by the United States Air Force in this case can reasonably be interpreted to include within its scope information about the

workings of the B-29, and therefore does not meet the demanding standard for fraud upon the court.

211. As the Eleventh Circuit has stated numerous times:

> Fraud upon the court . . . embrace[s] only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

Zakrzewski v. McDonough, 490 f.3d 1264, 1267 (11th Cir. 2007) (internal quotations and citations omitted). This Court has provided examples of what constitutes a fraud upon the court:

> Fraud which attempts to defile the court has been construed to include only the most egregious conduct, such as bribery of a judge or members of a jury; the fabrication of evidence by a party in which an attorney has been implicated; or the employment of counsel to 'influence' the court. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); Root Refin. Co. v. Universal Oil Products, 169 F.2d 514 (3rd Cir. 1948); Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir. 1978); 7 Moore, Federal Practice P 60.33, at 512.
> Williams, 90 F.R.D. at 142.

212. As can be seen, fraud, for purposes of 60(d)(3), this is not a mere misrepresentation, this is an attorney Raul Gastesi, Jr. intentional deceiving the Court about a fraudulent affidavit which the Sarhan's were coerced to sign or lose their home, when the loan was used for building materials to finish the home, not for a sprinkler system, trees or a drips system. The Fraud that Gastesi is perpetrating goes beyond this, he has filed these fraudulent documents on Appeal to deceive the Third DCA. Gastesi The Petitioner is quite able to show the level of fraud sufficient for relief under 60 (d)(3).

213. The United States Supreme Court has also noted the inherent power of courts to vacate judgments on basis of fraud upon the court. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).

To continue to allow the Court proceeding to take place is a Manifest Injustice and puts Stone in Irreparable Harm. Therefore Stone seeks herein a Stay of the Proceedings.

## XI. JUDGES RODRIGUEZ, SMITH, ROTHENBERG, SALTER, LOGUE ORDERS EXCEEDING JURISDICTION

216.   An order that exceeds the jurisdiction of the court is void and can be attacked in any proceeding in any court where the validity of the judgment comes into issue. (See Rose v. Himely (1808) 4 Cranch 241, 2 L ed 608; Pennoyer v. Neff (1877) 95 US 714, 24 L ed 565; Thompson v. Whitman (1873) 18 Wall 457, 21 1 ED 897; Windsor v. McVeigh (1876) 93 US 274, 23 L ed 914; McDonald v. Mabee (1917) 243 US 90, 37 Sct 343, 61 L ed 608.

217.   "If a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void." (1 Freeman on Judgments, 120c.)  "A void judgment is no judgment at all and is without legal effect." (Jordon v. Gilligan, 500 F.2d 701, 710 (6th Cir. 1974) "a court must vacate any judgment entered in excess of its jurisdiction." (Lubben v. Selective Service System Local Bd. No. 27, 453 F.2d 645 (1st Cir. 1972).

218.   A void judgment does not create any binding obligation. Federal decisions addressing void state court judgments include Kalb v. Feuerstein (1940) 308 US 433, 60 S Ct 343, 84 L ed 370.  Federal judges issued orders permanently barring Stich from filing any papers in federal courts.  After Judges Robert Jones and Edward Jellen corruptly seized and started to liquidate Stich's assets, Judge Jones issued an unconstitutional order barring Stich from filing any objection to the seizure and liquidation.

## XII. ARGUMENT

### THE THIRD DISTRICT COURT OF APPEALS RULING WAS INCONSISTENT WITH CONGRESSIONAL LAW AND THE LEGISLATURE

219. Chief Judge Leslie Rothenberg, (hereinafter ("Rothenberg"), Judge Glenn Salter (hereinafter, "Salter") and Thomas Logue (hereinafter, "Logue") were without jurisdiction to rule Per Curiam in this Case. The loan is an illegal loan, a Predatory loan, which are against Congressional Law and Florida Legislature Law and have no authority to make this loan legal. Upon requesting an Opinion was denied, Upon requesting an en banc Appeal was denied as well.

220. The Third District Court of Appeals have been highly criticized in the handling of foreclosures with threatening attorneys that argue zealously for their clients. **(EXHIBIT N)**

## XIII. ARGUMENT

### THE FBI'S FAILURE TO PROTECT THE SARHAN FAMILY FROM MORTGAGE FRAUD, PUBLIC CORRUPTION, CIVIL RIGHTS VIOLATIONS, COLOR OF LAW VIOLATION, WHITE COLLAR CRIMES OF MORTGAGE FRAUD

219. As part of the FBI's Mission Statement, the FBI has a responsibility to protect Sarhan and Family from Mortgage Fraud and Public Corruption and the other crimes mentioned above and has failed to do so. Sarhan has a long history with the FBI when they failed to protect Sarhan's mother from a Probate Court Judge Attorneys and Guardians that preyed on my mother Yvonne Sarhan, forced her into a guardianship case and stole our family entire estate, isolated my mother and then forced her to take a medication (Seroquel) that would kill her which caused Sudden Cardiac Death.

**(EXHIBIT A)**

## XIV. ARGUMENT

### MIAMI DADE COUNTY AND GOVERNOR RON DE SANTIS

Miami Dade County Police Department and Miami Dade County would do nothing about this judicial corruption. **"Crime in our Courts is no one's problem."** Governor Ron De Santis

refused to meet with me and allowed for our family to become homeless due to Judicial Corruption, Mortgage Fraud, White Collar Crimes, Civil Rights Violations and Color of Law Violations. Ron De Santis, just as Rick Scott has no intentions of stopping the corruption here in the State of Florida. Where it may be to late for my mother, but not to late for thousands that are losing their homes through a corrupt judiciary or where our parents are losing their lives in corrupt Guardianships.

Governor Ron De Santis and Miami Dade County have allowed these Judges to violate:

1. Sarhan's Constitutional Rights

2. Sarhan's Civil Rights

3. Color of State Law Violations

4. White Collar Criminal Activity

5. MORTGAGE FRAUD

## EXTRA EXHIBITS TO SUPPORT GASTESI AND HALIMS FRAUD ON THE COURT

EXHIBIT "O" IS SARHAN'S HOMESTEAD EXEMPTION

EXHIBIT "P" LOCATION OF SARHAN AND HALIMS HOMES

EXHIBIT "Q" ATTORNEY ARTHUR MORBURGER SHOWS HALIM, GASTESI'S FRAUD

EXHIBIT "R" ATTORNEY ARTHUR MORBURGER INITIAL APPELLATE BRIEF

EXHIBIT "S" RAUL GASTESI RESPONSE BRIEF A PRODUCT OF FRAUD ON THE COURT, STATING THE MONEY WAS USED FOR A SPRINKLER SYSTEM, TREES, DRIP SYSTEM.

EXHIBIT "T" ATTORNEY ARTHUR MORBURGER APPELLATE REPLY BRIEF

EXHIBIT "U" ATTORNEY ARTHUR MORBURGER REHEARING EN BANC

## CONCLUSION

Wherefore, Plaintiff demands damages against the Defendants, where Sarhan request:

1. Plaintiff Demands a trial by jury. Plaintiff request this Case can be transferred to the United States District Court Middle District of Florida, due to Sarhan being denied a fair and unbiased judiciary here in South Florida.

2. Plaintiff request 7 million dollars in punitive and compensatory damages for the Fraud that the Plaintiff had to endure over the last 10 years by H & H Investors Ralph Halim, Raul Gastesi, Jr., Thomas Sanders.

3. Plaintiff request that Halim, Gastesi and Sanders should be charged criminally with a second-degree felony for Mortgage Fraud (FS 817.545) and serve no less than five years in prison for Willfully, Maliciously and Intentional Mortgage Fraud, Civil Rights Violation, Color of Law Violations, White Collar Criminal Activity and both Gastesi and Sanders should be disbarred permanently for life.

4. Plaintiff request damages in the amount of 7 million dollars against Alfredo Duran, George Piro and Christopher Wray of the FBI, they had a duty under their Mission Statement, where acting under the Color of Federal Law, has denied to protect Sarhan and his Family from Public Corruption/Judicial Corruption, Constitutional Rights Violation, Civil Rights Violation, Color of Law Violations, White Collar Crimes and has not protected Sarhan's Civil Rights, where the FBI has flagrantly and arrogantly failed to protect Sarhan and his Family.

5. Plaintiff Demands 7 Million dollars against Miami Dade County for the pain and suffering Sarhan and Family suffered over the last 15 years for the death of his mother and for allowing corrupt Judges to operate out of the Miami Dade County Courthouses. Judge Rodriguez Robing Room Reports are not disgruntled litigants, they are people like

91

me that have actually seen and experienced the corruption in their particular cases. These five Judges should be dismissed from their position for failure to follow the laws of the United States Constitution and have flagrantly violated Federal and State Laws, where they have acted under the Color of Law and Maliciously, Willfully and Intentionally set out to destroy Sarhan's life due to widespread corruption and Sarhan's Freedom of Speech trying to protect the elderly from the Abuse and Exploitation from a corrupt Judiciary.

WHEREFORE, Robert Sarhan request this Honorable Court to Protect Sarhan and his family from Mortgage Fraud and Void the Judgment of the State Court. In the "Interest of Justice," we pray that this Court will allow this case to remain in this Federal Jurisdiction, if not, Sarhan and Family will suffer Irreparable Harm and a Manifest Injustice.

Dated this 28th Day of January 2019

Respectfully Submitted,

Robert Sarhan
22795 SW 212 Ave
Miami, Florida 33170
Tel.No. 305-338-6160
drrob2007@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of the foregoing was served by U.S. Mail to Raul Gestasi, Jr., 8105 N.W. 155th Street, Miami Lakes, Florida 33016, Thomas Sanders 17635 S. Dixie Highway, Miami, Florida 33157, Patreeze Pearce is the Court Reporter at Brickell, Gomberg & Associates located at 633 S. Andrews Avenue Suite 202, Fort Lauderdale 33301, William P. Wakshinsky owner of Brickell, Gomberg & Associates located at 633 S. Andrews Avenue Suite 202, Fort Lauderdale 33301, Judge Jose M. Rodriguez, as a Judge and

Individually; 73 West Flagler Street Miami, Florida 33130 Room: DCC 405. Judge Rodney Smith, as a Judge and Individually (will use his office address) 73 West Flagler Street Miami, Florida 33130 Room: DCC 1304, Judge Leslie Rothenberg, as a Judge and Individually, 2001 S.W. 117th Avenue, Miami, FL. 33175, Judge Glenn Salter as a Judge and Individually, 2001 S.W. 117th Avenue, Miami, FL. 33175, Judge Thomas Logue as a Judge and Individually, 2001 S.W. 117th Avenue, Miami, FL. 33175, George L. Piro, FBI director in charge, in his official capacity and individually, 2030 S.W. 145 Ave, Miramar, FL. 33027, Alfredo Duran, FBI Agent, in his official capacity and individually, 2030 S.W. 145 Ave, Miramar, FL. 33027, Christopher A. Wray, FBI Director, 935 Pennsylvania Ave NW, Washington, DC 20535, Miami Dade County Risk Management 111 NW 1st St, Ste 2810, Miami, FL 33128, Governor Ron De Santis Governor of Florida 400 S. Monroe St. Tallahassee, FL. 32399 on this 28th Day of January 2019.

Robert Sarhan
22795 SW 212 Ave
Miami, Florida 33170
Tel.No. 305-338-6160
drrob2007@yahoo.com